## MAINE PUBLIC SERVICE COMPANY, et al.,

### v.

## PUBLIC UTILITIES COMMISSION.

Supreme Judicial Court of Maine.

Argued March 15, 1985.

Decided April 25, 1985.

Petrucelli, Cohen, Erler & Cox, Gerald F. Petruccelli (orally), Portland, for Bangor Hydro-Electric Co.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Gerald M. Amero (orally), Portland, for Central Maine Power Co.

Verrill & Dana, Roger A. Putnam, Martin S. Amick, Portland, for Maine Public Service Co.

Joseph G. Donahue, Martha E. Greene, Beth A. Nagusky (orally), Public Utilities Com'n, Augusta, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

In this consolidated case, Maine Public Service Company ("MPSC"), Bangor Hydro-Electric Company ("BHEC"), and Central Maine Power Company ("CMP") seek review, pursuant to 35 M.R.S.A. §§ 303 and 305 (1978), of certain orders of the Public Utilities Commission (the "Commission") relating to the utilities' participation in the Seabrook Nuclear Power Plant project ("Seabrook"). The Commission moves for dismissal on the basis that it has issued no final order from which a section 303 appeal may be taken. Further, it asserts that appellate jurisdiction does not extend to the claims set forth in the section 305 complaints. Finally, the Commission argues that the case should be dismissed for prudential reasons, assuming the existence of jurisdiction. We deny the motion to dismiss the section 305 complaints and reserve decision on the dismissal of the section 303 appeals.

I.

MPSC, BHEC, and CMP are three of the sixteen owners of a partially constructed nuclear power facility located at Seabrook, New Hampshire. On June 8, 1984, the Commission gave notice of its intent to investigate the reasonableness of the involvement of the Maine utilities in the Seabrook project. The Commission, purporting to act pursuant to 35 M.R.S.A. § 296 (1978), announced that included in the investigation would be "the reasonableness of the utilities' decisions to date with respect to Seabrook and the reasonableness of any future involvement and the reasonableness of including Seabrook related costs in customer rates." A later procedural order further narrowed the issues in the first phase of the investigation to: "(a) [t]he reasonableness of further investment in Seabrook Unit I compared to alternative courses of action [and] (b) [t]he desirability of stating a ceiling for the costs to be chargeable to the ratepayers."

On November 24, 1984 after extensive investigatory hearings, the hearing examiners issued a report in which they recommended that the Commission make orders "to effectuate the termination of the Maine utilities' involvement with Seabrook." The examiners' recommendation was dependent upon the results of a study of the Maine utilities' obligations and liabilities under the Seabrook Joint Ownership Agreement (the "JOA"). As joint owners, MPSC, BHEC, and CMP are each obligated to pay their ownership share of the costs of the Seabrook project. Section 25 of the JOA governs defaults by participants:

No default in the performance of any obligation other than an obligation to make any payment hereunder which the Participant may legally make shall be deemed to exist if such default is the result of an "uncontrollable force." The term "uncontrollable force" as used herein shall mean ... restraint by court or public authority, or other causes beyond the control of the affected Participant, which such Participant could not reason-

ably have been expected to avoid by exercise of due diligence and foresight.

On December 4, 1984, in response to the Commission's request, the Attorney General's Office opined that if the Commission had the authority to issue a binding disengagement order to the Maine utilities, the Maine utilities "would be excused from further performance under the plain terms" of the JOA. The Commission had asked the Attorney General's Office to assume, for the purpose of rendering an opinion, that the Commission has legal authority to issue a binding disengagement order.

On December 13, 1984, the Commission issued the order that is the main focus of this appeal. The Commission stated in its December 13 Order that the order represented "the first of two steps necessary to conclude Phase I" of the Seabrook investigation. The second step would be an order scheduled for mid-January "in response to developments between now and January 11." The January 11 date is significant because the December 13 Order provides:

> ... Maine's three utilities may continue to participate in the construction of Seabrook I if, by January 11, 1985, they have received credible firm offers to buy their complete ownership shares upon completion or by a date certain (whichever is sooner) and at prices that are consistent with their testimony on completion dates and sale value in this proceeding.

The Commission continued:

> In the absence of such offers, the risks associated with further participation in Seabrook I may well outweigh the benefits for Maine consumers, and further expenditure by Maine utilities under such circumstances would be an unreasonable act under 35 M.R.S.A. § 294.

After summarizing the evidence on which it based its conclusion, the Commission stated:

> The absence of buyers on such mutually favorable terms will be proof that the testimony regarding the saleability of

Seabrook shares is not a reliable basis for our decision in this matter.

> In that event we will issue a final order regarding the participation of these three utilities in Seabrook I. Prudent planning requires the assumption that this subsequent Order will unequivocally require the Maine utilities to present plans for their complete disengagement from Seabrook within a short time after January 11th.

On January 11, 1985, MPSC, BHEC, and CMP each reported to the Commission on their efforts to sell their interests in Seabrook. Despite the fact that the results were unsatisfactory, the Commission granted permission for the utilities to continue their efforts to solicit offers. On that same date, the Commission issued an order requiring the utilities to:

> [P]resent detailed plans to achieve their complete and timely disengagement from Seabrook.

On January 30, the Commission granted limited participation rights in the proceedings to several non-Maine entities, including seven joint owners of Seabrook. On February 8, each of the Maine utilities filed a disengagement plan with the Commission.

### II.

The Commission now moves to dismiss the appeals filed by the utilities, arguing that the absence of a final order and the otherwise limited scope of this Court's appellate jurisdiction precludes review. The Legislature has provided two direct routes of appeal to the Law Court from rulings of the Commission. Under the terms of section 303:

> An appeal from a final decision of the commission may be taken to the law court on questions of law in the same manner as an appeal from a judgment of the Superior Court in a civil action.

Under section 305:

> [I]n all cases in which the justness or reasonableness of a rate, toll or charge by any public utility or the constitutional-

ity of any ruling or order of the commission is in issue, the law court shall have jurisdiction upon a complaint to review, modify, amend or annul any ruling or order of the commission, but only to the extent of the unlawfulness of such ruling or order.

Thus, our review of a Commission decision under section 303 is proper only if the decision presented for review is a final decision. All final Commission decisions may be appealed to the Law Court. In contrast, section 305 grants the Law Court jurisdiction to review non-final Commission rulings, but is confined to complaints that question a rate, toll or charge or that challenge the constitutionality of any Commission ruling or order, to the extent of its unlawfulness.

### III.

Initially, we consider the motions to dismiss the utilities' section 305 complaints. The Commission argues that the Law Court lacks jurisdiction to review the utilities' complaints because the complaints merely challenge the statutory authority of the Commission to issue the orders in question. In the Commission's view, the complaints must be dismissed because they fail to challenge the constitutionality of the orders.

The Commission relies on the following language from *Central Maine Power Co. v. Public Utilities Commission*, ("*Sobin*"), 395 A.2d 414, 422 (Me.1978), to support its position: "A mere allegation that the Commission has exceeded its statutory authority does not suffice in itself to invoke our section 305 jurisdiction." The Commission disregards the fact that more than a claim of action in excess of statutory authority is here involved.

The utilities' complaints contain a number of allegations, including: 1) that the Commission's orders violate constitutional proscriptions against the impairment of contracts, 2) that the Commission's orders were issued without adequate notice in violation of due process, 3) that the Commis-

sion's orders constitute a taking of property without just compensation in violation of due process, and 4) that the Commission's orders constitute an undue burden on interstate commerce. Violations of both the Maine Constitution and the United States Constitution are alleged. Finally, BHEC contends that because the Commission is without authority to issue a disengagement order, any such order is itself a violation of due process.

■ The Commission persists in asserting that the utilities have not put in issue the constitutionality of the Commission's orders. The Commission rests its argument on the premise that the constitutionality of one of its orders may be called into question only after the order has brought about a deprivation of life, liberty, or property. Putting aside the fact that the Commission has overlooked the utilities' allegation of unconstitutionality not involving due process, *e.g.* the alleged violation of the commerce clause, the Commission's emphasis on an actual past deprivation is misplaced in the context of a proceeding in equity. In addition, the utilities already have been forced to expend "property" in their attempts to comply with Commission's arguably unauthorized orders. We conclude, therefore, that the utilities have put in issue the constitutionality of the Commission's orders.

■ Although we have jurisdiction over the utilities' complaints, as a matter of judicial discretion we will not review a Commission order unless the order is " 'ripe' for judicial consideration and action." *See Lewiston, Greene and Monmouth Telephone Co. v. New England Telephone and Telegraph Co.*, 299 A.2d 895, 907 (Me.1973). In *Maine Water Co. v. Public Utilities Commission*, 388 A.2d 493, 498–499 (Me.1979), we said: "The inquiry in any case where ripeness is in issue should focus on 'the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration.' " (quoting *Abbott Laboratories v.*

*Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

In *Lewiston, Greene,* the New England Telephone and Telegraph Company was ordered "to take specific action within prescribed time limits immediately operative. ... [T]he 'Order' is not merely an abstract, tentative declaration by the Commission; it is a concrete, firm disposition of rights and obligations of the parties ... in form and substance sufficiently definitive" to be reviewed. *See* 299 A.2d at 908. Further, the *Lewiston, Greene* order was reviewable because it demonstrated "an avowed commitment by the Commission to effectuate its own plan in accordance with controlling principles, formulas and computations meticulously prescribed in the Order." *Id.*

In *Sobin* we found that the Commission's orders were ripe for review despite the absence of "an avowed commitment by the Commission to effectuate its own plan in accordance with principles, formulas and computations meticulously prescribed in its order." *See Sobin,* 395 A.2d at 424. In that case the fact that the Commission's orders directed the utility "to take specific action within prescribed time limits" was held to justify judicial intervention.

■ Although the Commission's December 13 Order does not contain meticulously prescribed formulas and computations, it does reveal an "avowed commitment", a commitment which was furthered by the January 16 Order (requiring the filing of disengagement plans as predicted in the December 13 Order). Moreover, the Commission's orders required specific action within "prescribed time limits", either immediately operative or sure to follow on the happening of a condition.

The orders in this case can be distinguished readily from the orders found to be unfit for judicial review in *Maine Water Co.,* 388 A.2d at 499, and *New England Telephone and Telegraph Co. v. Public Utilities Commission,* 448 A.2d 272, 303 (Me.1982). The present orders are neither nonspecific, nor tentative, nor dependent upon the actions of a third party for effectiveness.

The orders are fit for judicial action. They present primarily legal issues which are sufficiently concrete to justify judicial review. The orders have had a direct, immediate and continuing impact on the utilities, causing them to suffer hardship in the absence of immediate review. In addition, immediate review can only aid the Commission in making efficient use of its regulatory resources. *Cf. Abbott Laboratories,* 387 U.S. at 149–150, 152–154, 87 S.Ct. at 1515–1518.

## IV.

■ Finally, the Commission contends that common law jurisprudential principles require dismissal of the section 305 complaints. The Commission relies on the doctrine of primary jurisdiction which provides that as a general rule courts will refrain from deciding an issue that an administrative agency with jurisdiction over the question has not considered. *See Levesque v. Inhabitants of the Town of Eliot,* 448 A.2d 876, 878 (Me.1982). Although the Commission has couched its orders and arguments in a form designed to avoid the appearance of Commission consideration of the ultimate issues in this case, as the discussion of "ripeness" demonstrates, the substance of the Commission's actions reveals the requisite consideration.

■ The Commission also contends that the Law Court could issue no opinion on the merits of the utilities' complaints because such an opinion would be advisory in nature. We have said that "aside from opinions properly rendered on solemn occasions ... the judiciary has no power to issue advisory opinions ... [or] to pass on hypothetical questions." *See Bar Harbor Banking & Trust Co. v. Alexander,* 411 A.2d 74, 78 (Me.1980). For the reasons already stated, however, were the Law Court to render an opinion on the merits of the complaints, the opinion would not be advisory.

## V.

Because we have decided that the section 305 complaints are validly before us, we need not determine whether the Commission's orders constitute final decisions within the meaning of section 303. Consequently, we do not decide whether the Commission's motions to dismiss the utilities' section 303 appeals should be granted. Instead, we retain the motions to dismiss appeals on the Law Court docket, as continued, without decision. *See Lewiston, Greene,* 299 A.2d at 913.

The entries are:

(a) The motions to dismiss the section 305 complaints are denied;

(b) The motions to dismiss the section 303 appeals are continued until further order of court.

All concurring.