Public Employee Labor Relations Board
No. 96-387

### APPEAL OF STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC.

(New Hampshire Public Employee Labor Relations Board)

June 16, 1998

*Michael C. Reynolds*, of Concord, by brief and orally, for the State Employees' Association of New Hampshire, Inc., S.E.I.U., Local 1984.

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State.

BROCK, C.J. The State Employees' Association of New Hampshire, Inc., S.E.I.U., Local 1984 (union), appeals a decision of the New Hampshire Public Employee Labor Relations Board (board) dismissing the union's unfair labor practice (ULP) complaints. The complaints alleged that the State's passage of House Bill 32 (HB-32) with the executive branch's support breached a collective bargaining agreement (CBA) between the State and the union, and that the State's refusal to negotiate employment terms and conditions affected by HB-32 constituted an ULP. We affirm.

We accept the following facts found by the board because competent evidence in the record supports them. *See* RSA 541:13 (1997); *Appeal of Dube*, 138 N.H. 155, 158, 636 A.2d 59, 61 (1993). The union, the certified bargaining agent for employees of the New Hampshire Department of Health and Human Services (DHHS), entered into a CBA with the State for the period July 1, 1995, through June 30, 1997. In October 1995, the union filed an ULP complaint against the State, the Governor, and the commissioner of the DHHS. The union alleged that the State committed an ULP by proposing HB-32 because the bill, *if passed*, would directly affect wages, benefits, and terms and conditions of employment covered by the CBA. HB-32 provides for "an integrated, administrative structure for the design and delivery of a comprehensive and coordinated system of health and human services." Laws 1995, 310:1. The purpose of HB-32, as originally set forth by the legislature in the bill, was to enable the DHHS "to carry out a restructuring of its

organization" and to provide the DHHS "with maximum flexibility and authority to effect the proposed reorganization and to respond quickly" to changes in the State population's needs or budgets, or in federal programs and guidelines. The board dismissed this complaint for lack of ripeness.

On November 1, 1995, HB-32 was passed in a special session. Laws 1995, ch. 310. On November 9, 1995, the State refused the union's demand to re-open negotiations concerning the impact of HB-32 on the terms and conditions of employment. Shortly thereafter, the union filed a second complaint against the Governor and the State Negotiating Committee arguing that the passage of HB-32 constituted an ULP in violation of RSA 273-A:5, I(e), (h), (i) (1987). In this complaint, the union requested the board to find that HB-32 had a "direct impact upon the terms and conditions of employment of classified employees of the [DHHS]," and removed the prohibition on negotiation of, *inter alia*, transfer, classification, lay-off, and recall of employees. Furthermore, the union requested the board to find that the State had committed ULPs by passing HB-32 and by refusing to negotiate employment terms affected by HB-32. The board also dismissed this complaint on several grounds, including: (1) the union's failure to show specific harm or violations of any statute or the CBA; (2) the union's failure to show any change in employee benefits previously regulated by the personnel rules; and (3) the State's showing that the grievance procedure established by the CBA continued to be available to employees. The board denied the union's motion for reconsideration, and this appeal followed. The parties, however, also entered into negotiations from October 1996 until May 1997.

Our review is governed by RSA 541:13 (1997). *Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996). "A party seeking to set aside or vacate an order of the [board] must show that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable." *Id.*; *see* RSA 541:13.

■ The union first argues that the State's promotion and passage of HB-32 breached the CBA by altering the personnel rules for classified DHHS employees and, thus, constituted an ULP. *See* RSA 273-A:5, I(h), (i). In interpreting the CBA, we analyze the agreement as a whole and give terms their common or ordinary meaning. *See Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 11, 661 A.2d 1197, 1198 (1995).

Article XIX, section 19.1 of the CBA states that "[e]mployees shall be provided all the rights and benefits to which they are

entitled by law and this Agreement." Section 19.7 of the same article requires that "[e]ach employee shall have available to him/her all rules, regulations and directives relative to the department by which he/she is employed." Article II, section 2.1 is the only other relevant section in the CBA that mentions "personnel rules" and the impact of laws or regulations on the CBA. Section 2.1 provides, in pertinent part, that "[t]he Employer retains all rights to manage, direct and control its operations in all particulars, *subject to the provisions of law, personnel regulations* and the provisions of this Agreement, to the extent that they are applicable." (Emphasis added.)

The term "subject to" indicates that the State's managerial rights are subservient to or governed by the personnel regulations. *See Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 591, 688 A.2d 565, 567 (1997); *see also Terrill v. Barber*, 515 S.W.2d 239, 239 (Ky. 1974). "Subject to" the provisions of law and personnel regulations clearly means that the employer's managerial rights are limited by the laws and regulations existing at the time the CBA was created *and* by any amended or new laws and regulations that are effective at the time the State exercises its managerial rights. *See Head v. The University*, 86 U.S. 526, 530 (19 Wall. 1873); *City of East Chicago v. State*, 84 N.E.2d 588, 593 (Ind. 1949). None of the terms of the CBA prohibit the State from changing the "personnel rules" during the life of the agreement. Accordingly, we conclude that the State's support for the adoption of HB-32, to the extent that it altered the personnel rules applicable to classified DHHS employees, did not breach any provision of the CBA.

The union next contends that the board erred in dismissing the union's complaints because the State, as the employer, may not unilaterally impose changes in the terms and conditions of employment without first negotiating on these issues. *See* RSA 273-A:5, I(e). The union essentially alleges that passage of HB-32 gave the State the right to change the personnel rules with respect to wages, benefits, hours, and terms of employment, including the transfer, reassignment, and reclassification of employees, without entering into negotiations with the union. Although the State concedes that passage of HB-32 suspended an employee's right to request a reallocation or reclassification of a position under the personnel rules, and the right of an employee who is laid off to "bump" a less senior employee, it argues that the union's complaints are not ripe because such alterations did not breach or invalidate any provisions of the CBA. The State emphasizes that the CBA did not secure

either of these rights and that until the commissioner "exercises his Chapter 310 [HB-32] powers in a manner which violates the [CBA], the [union's] allegations of breach are not ripe for review." We agree with the State that the union's allegations of breach are not ripe for our review because the commissioner did not exercise his authority in a manner which violated the CBA.

■ The ripeness doctrine prevents courts "from entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967); *see Maine Public Service Co. v. P.U.C.*, 490 A.2d 1218, 1221 (Me. 1985); *Appeal of Tancrede*, 135 N.H. 602, 604, 608 A.2d 1308, 1309 (1992). Furthermore, "[r]ipeness relates to the degree to which the defined issues in a case are based on actual facts . . . and are capable of being adjudicated on an adequately developed record." *Dept. of Enviro. v. Chemical Waste*, 643 N.E.2d 331, 336 (Ind. 1994). Although we decline to adopt a formal test for ripeness at this time, we find persuasive the two-pronged analysis used by other jurisdictions that evaluates the fitness of the issue for judicial determination and the hardship to the parties if the court declines to consider the issue. *See, e.g., Abbott Laboratories*, 387 U.S. at 149; *Maine Public Service Co.*, 490 A.2d at 1221.

■ In this case, the record contains only general allegations that the union was actually harmed by the passage of HB-32. For example, the union merely stated that it felt "that [the union] has been substantially damaged," without offering a detailed explanation or specific example. Although the union filed an ULP complaint, it did not submit evidence of any specific circumstances where the State refused or failed to address an employee's complaint or grievance. Instead, the union's arguments are based on unsubstantiated facts, general allegations of harm, and requests for resolution of potential future claims rather than on actual facts contained in the record. Therefore, we conclude that the union's claims regarding the changes in the terms and conditions of employment allegedly resulting from the passage of HB-32 are not ripe for our review.

■ Even assuming that the State had a duty under the CBA or statute to bargain the changed terms and conditions of employment once the commissioner acted within the authority conferred by HB-32, *see Appeal of Berlin Educ. Ass'n*, 125 N.H. 779, 783, 485 A.2d 1038, 1041 (1984), the parties' negotiations from October 1996

until May 1997 rendered the union's argument about the State's refusal to bargain moot. *See Appeal of Mascoma Valley Reg. School Dist.*, 141 N.H. 98, 99, 677 A.2d 679, 680 (1996). Those negotiations addressed issues related to HB-32 and the subject matter of the union's ULP complaints, such as employee "bumping" rights and reclassification, and led to approval of a new collective bargaining agreement that is now in effect. Accordingly, we conclude that the union's argument regarding the State's refusal to negotiate is now moot, and we decline to address it.

We hold that the board's dismissal of the union's ULP complaints was not unlawful, unjust, or unreasonable. We have reviewed the record and find the parties' remaining arguments to be without merit and warranting no further discussion. *See, e.g., Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.