1998 ME 257

**MAINE AFL–CIO**

v.

**SUPERINTENDENT OF INSURANCE.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1998.

Decided Dec. 4, 1998.

Patrick N. McTeague (orally), James W. Case, McTeague, Higbee, McAdam, Case, Watson & Cohen, Topsham, for plaintiff.

Andrew Ketterer, Attorney General, Jeffrey Frankel, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

DANA, J.

[¶ 1] The Maine AFL–CIO appeals from a judgment entered in the Superior Court (Penobscot County, *Alexander, J.*) dismissing for lack of ripeness its appeal challenging a rule promulgated by the Bureau of Insurance (Bureau) governing "pilot projects" for workers' compensation insurance pursuant to 39–A M.R.S.A. § 403 (Supp.1998). We affirm the judgment of the Superior Court.

[¶ 2] Maine employers have three options in providing workers' compensation coverage

for employees.[1] An employer may purchase workers' compensation insurance, § 403(1); establish an authorized self-insurance program, § 403(3); or devise a "workers' compensation health benefits pilot project," § 403(2). A pilot project, also referred to as a "24-Hour Coverage Plan," provides employers and employees the opportunity to design and implement an insurance program that combines benefits for work-related and nonwork-related conditions. The Superintendent of Insurance (Superintendent) has the responsibility of adopting rules governing pilot projects. 39-A M.R.S.A. § 403(2)(A) (Supp.1998).

[¶ 3] At issue here is whether a pilot project that incorporates workers' compensation indemnity payments with general health coverage may reduce indemnity payments if the overall benefits "are equal to or greater than" the benefits otherwise available under the Workers' Compensation Act. Section 403(2)(A) provides that the Superintendent "may approve a proposal only if it confers

medical benefits, or medical and indemnity benefits depending on the pilot project proposal, upon injured employees that *are equal to or greater than the benefits available under this Title.*" 39-A M.R.S.A. § 403(2)(A) (Supp.1998) (emphasis added). The AFL-CIO argues that pilot projects that include indemnity coverage and medical coverage cannot, under any circumstance, reduce the statutory minimum indemnity benefits under the Workers' Compensation Act.

[¶ 4] After a Bureau of Insurance Rulemaking Hearing, the Superintendent rejected the AFL-CIO's position. The Bureau promulgated Amendments to Bureau of Insurance Rule 690, which defines "alternative benefit design" as "an integrated or coordinated 24-hour medical coverage plan which provides for medical or disability benefits that differ from the minimum benefits otherwise required under the Workers' Compensation Act...." Amendments to Bureau of Insurance Rule 690, 24-Hour Coverage Pilot Projects § 3(K) (1996). Further, Rule 690

---

1. Title 39-A M.R.S.A. § 403 provides:

    **Insurance by assenting employer; requirements as to self-insurers**

    An employer subject to this Act shall secure compensation and other benefits to the employer's employees in one or more of the ways described in this section....

    **1. Insuring under workers' compensation insurance policy.** The employer may comply with this section by insuring and keeping insured the payment of such compensation and other benefits under a workers' compensation insurance policy....

    **2. Pilot projects.** Workers' compensation health benefits pilot projects are authorized under the following provisions.

    **A.** The Superintendent of Insurance shall adopt rules to enable employers and employees to enter into agreements to provide the employees with health care benefits covering workplace injury and illness and nonworkplace injury and illness and other health care benefits, or health care and indemnity benefits covering workplace injury and illness and nonworkplace injury and illness and other health care and indemnity benefits, in comprehensive pilot projects. The health care and indemnity benefits may be provided by: organizations authorized to do business under Title 24; insurers or health maintenance organizations authorized to do business under Title 24-A; employee benefit plans; and benefit plans of employers who self-insure under this section. The superintendent shall review all pilot project proposals and may approve a

    proposal only if it confers medical benefits, or medical and indemnity benefits depending on the pilot project proposal, upon injured employees that are equal to or greater than the benefits available under this Title. Indemnity benefits may only be modified in those pilot projects providing medical and disability benefits for all workplace and nonworkplace diseases and injuries. The superintendent shall revoke approval if the pilot project fails to deliver the benefits contained in the proposal. A pilot project proposal that provides indemnity benefits deviating in any way from the indemnity benefits provided under this Title must include in its application to the superintendent for approval under this section a methodology for identifying both the costs and benefits of the deviations and a methodology for comparing those costs and benefits to the costs and benefits provided under this Title. The superintendent may not approve a pilot project that does not provide, as determined by the superintendent, an adequate basis for making the foregoing cost-benefit comparison between the pilot project and this Title.
    ....

    **3. Proof of solvency and financial ability to pay; trust.** The employer may comply with this section by furnishing satisfactory proof to the Superintendent of Insurance of solvency and financial ability to pay the compensation and benefits....
    ....

    39-A M.R.S.A. § 403 (Supp.1998).

provides that "[n]o alternative benefit design may be approved unless the Superintendent determines, after consultation with the Workers' Compensation Board, that (i) the *overall level of benefits*, taking into account both amount and duration, remains equal to or greater than the level of benefits otherwise required under the Workers' Compensation Act...." *Id.* § 8(E) (emphasis added). Therefore, Rule 690 contemplates a pilot project that could reduce the statutory minimum indemnity benefits required by the Workers' Compensation Act, so long as the overall benefits of the pilot project are equal to or greater than benefits pursuant to the Workers' Compensation Act. To date, no pilot project has been proposed to the Superintendent for review.

[¶ 5] The AFL–CIO appealed the Bureau's promulgation of Rule 690, arguing, inter alia, that it is inconsistent with section 403. The Superior Court (Penobscot County, *Alexander, J.*) dismissed the AFL–CIO's claims, finding that the issues were not yet ripe for judicial decision-making because no plan had been offered for approval before the Superintendent. The AFL–CIO appeals.

### RIPENESS

[¶ 6] The AFL–CIO argues that the Superior Court improperly applied the doctrine of ripeness to its appeal because 5 M.R.S.A. § 8058(1) requires mandatory review of all appeals of agency rules.[2] We disagree.

[¶ 7] As a matter of judicial discretion, courts will not review an agency action unless the issue is "ripe" for judicial consideration and action. *See Maine Public Serv. Co. v. Public Utils. Comm'n*, 490 A.2d 1218, 1221–22 (Me.1985). The principle underlying the doctrine of ripeness is "to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *New England Tel. & Tel. Co. v. Public Utils. Comm'n*, 448 A.2d 272, 302 (Me.1982) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Because this principle applies to appeals to agency rulemaking pursuant to section 8058, we conclude that the Superior Court did not err when it applied the doctrine of ripeness to the AFL–CIO's claims.[3]

[¶ 8] To determine if an issue is ripe for review, the court focuses on "the

2. Title 5 M.R.S.A. § 8058 provides in pertinent part:

**Judicial review of rules**

**1. Judicial review.** Judicial review of an agency rule, or of an agency's refusal or failure to adopt a rule where the adoption of a rule is required by law, may be had by any person who is aggrieved in an action for declaratory judgment in the Superior Court conducted pursuant to Title 14, section 5951, et seq., which provisions shall apply to such actions wherever not inconsistent with this section. Insofar as the court finds that a rule exceeds the rule-making authority of the agency, or is void under section 8057, subsection 1 or 2, it shall declare the rule invalid. In reviewing any other procedural error alleged, the court may invalidate the rule only if it finds the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred. If the court finds that the rule is not procedurally invalid and not in excess of the agency's rule-making authority, its substantive review of that rule shall be to determine

whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. The phrase "otherwise not in accordance with the law" shall apply only to the review authorized in the preceding sentence and shall not be construed so as to limit or replace in any way section 8003. In the event that the court finds that an agency has failed to adopt a rule as required by law, the court may issue such orders as are necessary and appropriate to remedy such failure.

. . . .

5 M.R.S.A. § 8058(1) (1989).

3. We have applied the doctrine of ripeness in various contexts. For example, we have applied the doctrine of ripeness to appeals from the Public Utilities Commission, pursuant to 35 M.R.S.A. § 303, recodified as 35-A M.R.S.A. § 1320 (1998), *see, e.g, Maine Public Serv. Co. v. Public Utils. Comm'n*, 524 A.2d 1222, 1226 (Me. 1987); *Maine Public Serv. Co.*, 490 A.2d at 1221–22; *New England Tel. & Tel. Co.*, 448 A.2d at 302–03; to actions brought pursuant to the Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–63 (1980), *Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me.1995); and to appeals pursuant to

fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Maine Public Serv.*, 490 A.2d at 1221 (quoting *Abbott Lab.*, 387 U.S. at 149, 87 S.Ct. 1507). An issue is fit for review if the agency's action "presents a concrete and specific legal issue" that has a "direct, immediate and continuing impact" on the appealing party. *Maine Public Serv.*, 524 A.2d at 1226. Here, none of the issues raised by the AFL–CIO to the Superior Court are fit for adjudication. Rule 690 does not affect any party unless and until a pilot program is designed and proposed. Unless every pilot plan would violate section 403, we cannot conclude that the issue is fit for review. A determination of this issue in its current posture is premature and is more appropriately left for specific challenges in the future, after a pilot program has been approved. See *Wagner*, 663 A.2d at 567–68.

[¶ 9] In addition, the AFL–CIO has not demonstrated sufficient "hardship" to warrant this Court's immediate review of the alleged inconsistency between Rule 690 and section 403. *See Abbott Lab.*, 387 U.S. at 152–53, 87 S.Ct. 1507 (finding hardship where party is forced to comply and incur financial burden or not comply and face civil and criminal penalties); *Lewiston, Greene and Monmouth Tel. Co. v. New England Tel. & Tel. Co.*, 299 A.2d 895, 908 (Me.1973) (order requiring party to undertake various studies to develop data for Commission imposes an immediate financial burden). The AFL–CIO argues that workers are harmed because of the vast disparity in financial power between workers and management in attempting to craft pilot projects and to challenge, on appeal, particular pilot projects. These alleged hardships are speculative and concern "future adverse financial consequences" that may or may not result. *See New England Tel. & Tel. Co.*, 448 A.2d at 303 (finding party will not suffer "heavy financial burden" or an "undue burden" where any future financial consequences are "speculative"). Rule 690 does not have "a direct,

immediate and continuing impact [on the AFL–CIO], causing [it] to suffer hardship in the absence of immediate review." *See Maine Public Serv. Co.*, 490 A.2d at 1222. Consequently, the issue raised by the AFL–CIO is not ripe for judicial review.

[¶ 10] Likewise, the AFL–CIO's challenge to Rule 690 based on potential violations of the Employee Retirement and Income Security Act of 1974 is not ripe for review and does not warrant further discussion.

The entry is:

Judgment affirmed.

---

M.R. Civ. P. Rule 80(B), *Schmidt v. Town of Northfield*, 534 A.2d 1314, 1317 (Me.1987). Pursuant to the Administrative Procedures Act, 5 M.R.S.A. § 11001 (1989), the Superior Court may only review "final" agency actions to ensure

that the court only considers "ripe" issues. *See Wheeler v. Maine Unemployment Ins. Comm'n*, 477 A.2d 1141, 1145(Me.1984). Accordingly, we apply the ripeness doctrine to appeals pursuant to 5 M.R.S.A. 8058.