**DARLING'S d/b/a Darling's Nissan, Plaintiff,**

v.

**NISSAN NORTH AMERICA, INC., Defendant.**

No. Civ. 00–135–B–S.

United States District Court, D. Maine.

Sept. 18, 2000.

Judy Metcalf, Eaton, Peabody, Bradford, & Veague, P.A., Brunswick, ME, for Plaintiff.

Daniel L. Goldberg, Selena Fitanides, Bingham, Dana & Gould, Boston, MA, Jennifer S. Riggle, Germani & Riggle, LLC, Portland, ME, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SINGAL, District Judge.

Plaintiff, Darling's Nissan ("Darling's"), brings this action against Defendant, Nissan North America, Inc. ("Nissan"), pursu-

ant to the Maine Motor Vehicle Dealer's Act, 10 M.R.S.A. §§ 1171–1186. Plaintiff requests: a determination of whether good cause exists to permit Defendant to modify a franchise, an order enjoining any modification to the parties' franchise, and an award of attorney's fees.

■ Before the Court is Defendant's Motion to Dismiss the Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6). Pursuant to Fed. R.Civ.P. 12(b), the Court treats the Motion to Dismiss as a motion for summary judgment because matters outside the pleadings have been presented and have not been excluded by the Court. It is within the Court's discretion to convert the Motion to Dismiss to a summary judgment motion because the nonmovant, Plaintiff, has had an opportunity to respond to the relevant factual allegations raised by Defendant. *See Whiting v. Maiolini*, 921 F.2d 5, 6 (1st Cir.1990) (district courts have discretion to convert 12(b)(6) motions to Rule 56 motions without prior notice to parties if nonmovant has had opportunity to respond to movant's affidavits and factual allegations). For the reasons discussed below, Defendant's Motion to Dismiss, treated as a motion for summary judgment, is GRANTED. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

## STANDARD OF REVIEW

A federal court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the facts "in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993).

Pursuant to this standard, the Court lays out the facts below.

## BACKGROUND

Darling's is an automobile dealership located in Bangor, Maine. Nissan is a manufacturer of motor vehicles based in Carson City, California. Darling's and Nissan are engaged in a franchise arrangement, with Darling's as the franchisee, and Nissan as the franchisor. The franchise was established by the Nissan Dealer Sales and Service Agreement, dated effective May 31st, 1990. Attached to the Sales and Service Agreement is a one-page document, the Dealership Facilities Addendum.

Darling's Nissan shares its dealership facility with two other motor vehicle franchisees: Darling's Honda and Darling's Volvo. Nissan, Honda and Volvo automobiles are sold at the same location. Plaintiff alleges that the Honda dealership already existed at the inception of the Nissan franchise in 1990, and that Defendant was aware that Darling's Volvo began to operate in 1995. (Pl. Compl.¶¶ 5–6.) The Sales and Service Agreement and the Dealership Facilities Addendum are silent in regard to exclusive facilities.

Darling's received a letter from Nissan dated April 7th, 2000. Darling's claims that Nissan sent the same letter to all Nissan dealerships in the United States. (*Id.* ¶ 10.) In the letter, Nissan states that it plans to require its franchisees to operate facilities that exclusively feature Nissan automobiles. In pertinent part, the letter reads:

> Nissan seeks exclusive dealership facilities and operations in all primary market areas, and requires exclusive dealerships in primary market areas with Nissan annual retail registrations or planning volumes of 400 new units or more. In the event you propose to relocate, sell, or transfer all [or] part of the dealership assets or ownership, Nissan will require exclusive representation at your dealership.

(Pl.Compl.Attach.B.) On or about May 4th, 2000, Darling's sent a letter via certified mail to Nissan, in which Darling's objected to Nissan's plans to require exclusive dealerships. (Pl.Compl.¶ 11.) Darling's alleges that Nissan did not respond to the May 4th letter. (*Id.* ¶ 12.)

On June 2nd, 2000, Darling's filed this action under the Maine Motor Vehicle Dealer's Act, 10 M.R.S.A. §§ 1171 – 1186, in Maine Superior Court. Nissan alleges that Darling's—either prior to or after filing suit—has not made a written demand upon Nissan to engage in nonbinding mediation to resolve this dispute. (Def.Mot. to Dismiss at 9.) Darling's does not deny this allegation. (John B. Darling Aff.) In fact, Darling's has argued that requesting mediation is unnecessary. (Pl.Mem. in Opp. to D.Mot. to Dismiss at 4–7.)

## DISCUSSION

In its Complaint, Plaintiff requests: (1) a determination of whether there is good cause for permitting the proposed modification to the franchise, pursuant to 10 M.R.S.A. § 1174(3)(B), (2) an order pursuant to 10 M.R.S.A. § 1174(3)(B) finding that the imposition of an exclusivity requirement is an attempt to coerce Plaintiff to modify the franchise, an unfair method of competition and an unfair and deceptive practice, and enjoining Defendant from making such an attempt to coerce, and (3) an award of attorney's fees and costs, pursuant to 10 M.R.S.A. § 1173.

The Maine Motor Vehicle Dealer's Act imposes numerous restrictions on the relationships between automobile franchisors and franchisees within the state of Maine. *See* 10 M.R.S.A. §§ 1171–1186. The relevant section of the chapter lists a number of unlawful acts deemed "unfair methods of competition" and "unfair and deceptive practices". *See id.* § 1174. More specifically, the statute states that a franchisor cannot "coerce, or attempt to coerce" a franchisee into entering an agreement

by threatening to cancel a franchise ... or by threatening to modify a franchise during the term of the franchise or upon its renewal, if the modification substantially and adversely affects the motor vehicle dealer's rights, obligations, investment or return on investment, without giving 60 days' written notice of the proposed modification to the motor vehicle dealer, unless the modification is required by law or court order. Within the 60–day notice period, the motor vehicle dealer may file with the Superior Court in the county where the dealership is located and serve notice upon the manufacturer a protest requesting a determination of whether there is good cause for permitting the proposed modification. The manufacturer has the burden of proving good cause.

*Id.* § 1174(3)(B).

Plaintiff argues that the April 7th, 2000 letter constitutes a threat by which Defendant is attempting to coerce Plaintiff into modifying the franchise, within the meaning of section 1174(3)(B). Following the language of section 1174(3)(B), Plaintiff considers this action a "protest" by which it may receive a determination of whether Defendant has good cause to modify the franchise. (Pl.Mem. in Opp. to D.Mot. to Dismiss at 5.) Plaintiff asks this Court to make such a determination, and to enjoin Defendant from attempting to make any such modification.

In its Motion to Dismiss, Defendant raises three arguments: (1) Plaintiff's case is unripe for judicial review, (2) Plaintiff failed to initiate nonbinding mediation as required by section 1173–A of the Maine Motor Vehicle Dealer's Act, and (3) Plaintiff fails to allege that Defendant's actions qualify as "threatening to modify a franchise" within the meaning of the Act.

### 1. Lack of Ripeness

The ripeness requirement derives from Article III of the United States Constitution, which grants the Judiciary the power to hear "Cases" and "Controver-

sies". U.S. Const. Art. III Sec. 2. The ripeness doctrine generally precludes federal courts from exercising jurisdiction over cases involving uncertain or contingent events that may not occur as anticipated, or indeed may not occur at all. *Himes v. Johnson*, 772 F.Supp. 678, 680 (D.Me.1991). To determine whether a case is ripe for judicial review, courts must examine (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998); *Patrons Oxford Mutual Ins. Co. v. Garcia*, 707 A.2d 384, 385 (Me.1998). Because the Court finds this case is fit for judicial decision and that Plaintiff may suffer hardship if consideration of its claims is withheld, this case satisfies the requirements for ripeness.

■ Defendant argues that the issues are not fit for judicial decision because they are "speculative and concern future adverse financial consequences that may or may not result". (D.Mot. to Dismiss at 5 (quoting *Maine AFL—CIO v. Superintendent of Ins.*, 721 A.2d 633, 636 (Me. 1998)).) Specifically, Defendant argues that the case is unripe because the events mentioned in the April 7th letter have not occurred. The letter reads that "In the event you propose to relocate, sell, or transfer all [or] part of the dealership assets or ownership, [Defendant] will require exclusive representation at your dealership." (Pl.Compl.Attach.B.) It is undisputed that Plaintiff has not proposed to relocate, sell or transfer all or part of its dealership assets or ownership. Nevertheless, Defendant's promise to require exclusive dealerships in the future could amount to a threat to modify the franchise. *See Coombs v. Town of Ogunquit*, 578 F.Supp. 1321, 1326 (D.Me.1984) (finding lack of ripeness when there was "not even any threat" of interference with plaintiff's rights).

The question of whether or not a threat to modify a franchise amounts to a case fit for judicial decision has been answered by the Maine Legislature. By enacting section 1174(3)(B), the Legislature has provided franchisees with a right of action to challenge proposed modifications to franchises. The statute specifically allows litigation for "threatening to modify a franchise". § 1174(3)(B). Sending to a franchisee a letter stating that the franchisor will in the future require exclusive facilities could constitute a threat to modify the franchise. Thus, the April 7th letter from Defendant to Plaintiff arguably is a threat to modify the parties' franchise, thereby triggering section 1174(3)(B). Because the Legislature has enacted a statute creating a legal process by which courts may determine good cause to modify a franchise, the Court finds this case is fit for judicial decision.

■ The Maine Legislature also has helped answer the second question of a ripeness analysis, whether the parties would suffer any hardship if a court withholds consideration. By giving franchisees the right to challenge a threatened modification to a franchise, the Legislature recognizes that franchisees may suffer hardship from threats and modifications to franchises. Plaintiff avers that Defendant's statement that it will require exclusivity has altered the way that Plaintiff manages its business. Also, if Defendant follows through and later requires exclusive franchisees, that would cause Plaintiff financial loss because Plaintiff would have to relinquish its franchises with Volvo and Honda, which Plaintiff characterizes as "valuable". (Pl.Mem. in Opp. to D.Mot. to Dismiss at 8.)

Defendant argues that Plaintiff's claim comes too early, but according to the Maine Motor Vehicle Dealer's Act, Plaintiff has brought its claim at the statutorily prescribed time. Section 1174(3)(B) invites franchisees to initiate lawsuits as soon as a franchisor threatens to modify a franchise, not once the franchisor actually acts to change the franchise. For example, when determining whether a threat-

ened modification has good cause, the statute requires courts to consider, among other things, "Whether the proposed modification *will* have a substantial and adverse effect upon the motor vehicle dealer's investment or return on investment". 10 M.R.S.A. § 1174(3)(B)(3) (emphasis added).

By allowing a franchisee to seek judicial intervention after a threat has been made, but before a franchisor has made an overt act to modify a franchise, the Legislature implies that a franchisee would suffer hardship if forced to wait to ask a court for a determination of good cause. In this case, Plaintiff may suffer financial loss if forced to wait for later adjudication. If the Court withholds consideration, Plaintiff may suffer hardship. Therefore, the Court does not dismiss Plaintiff's Complaint on the grounds that the claims are not ripe for judicial review.

## 2. Mediation Requirement

■ Even if the Court finds Plaintiff's claims ripe, Defendant argues that Plaintiff has failed to satisfy a prerequisite to filing lawsuits based on the Maine Motor Vehicle Dealer's Act. *See* 10 M.R.S.A. § 1173–A. Under section 1173–A, franchisees may not file suit against franchisors under the Maine Motor Vehicle Dealer's Act unless the franchisees first make written demand for mediation. A franchisee plaintiff may not file a lawsuit until either the parties have engaged in nonbinding mediation or the franchisor defendant has ignored the written demand for 60 days, whichever is sooner. *See* 10 M.R.S.A. § 1173–A.

The Court views the record and makes all reasonable inferences in a light most favorable to Plaintiff, the party opposing summary judgment. *See Pagano,* 983 F.2d at 347. Nonetheless, the record clearly indicates that Plaintiff has never made a written demand upon Defendant for mediation. (*See e.g.,* John B. Darling Aff., Pl.Mem. in Opp. to D.Mot. to Dismiss at 4–7.) Because Plaintiff did not seek mediation prior to filing this action, Defendant argues that the lawsuit must be dismissed.

■ Plaintiff argues that it was not obligated by section 1173–A to demand mediation because the specific wording of section 1173–A differs from the wording used in section 1174(3)(B), the statutory source of Plaintiff's Complaint. (P.Mem. in Opp. to D.Mot. to Dismiss at 4–7.) Plaintiff's argument fails, however, because the wording of section 1173–A does include Plaintiff's claims, and because the purpose of section 1173–A is to require mediation prior to all actions brought under the statute.

Plaintiff's wording argument necessitates an analysis of the language of sections 1173–A and 1174(3)(B). Section 1174(3)(B) creates a cause of action for franchisees to prevent franchisors from trying to modify franchises. The section reads in pertinent part

> Within the 60–day notice period, the motor vehicle dealer may file with the Superior Court in the county where the dealership is located and serve notice upon the manufacturer a protest requesting a determination of whether there is good cause for permitting the proposed modification.

10 M.R.S.A. § 1174(3)(B). Section 1173–A states

> A franchisee may not bring an action for recovery of damages or for equitable relief until the franchisee has served upon the franchisor a written demand for nonbinding mediation and either the parties have engaged in such mediation with an independent mediator or 60 days have passed from the franchisor's receipt of notice of mediation, whichever occurs sooner.

10 M.R.S.A. § 1173–A. In its response to Defendant's Motion to Dismiss, Plaintiff argues that it was not obligated by section 1173–A to demand mediation because its lawsuit does not fall within the language of section 1173–A. Plaintiff states that it has filed a "protest" rather than an "action"

and that it seeks a "determination" rather than "damages" or "equitable relief". (Pl. Mem. in Opp. to D.Mot. to Dismiss at 3, 5.) According to Plaintiff, a protest is not an action, and a determination is not damages nor equitable relief. Plaintiff argues that because section 1173–A requires prior mediation for actions for damages or equitable relief, and not for protests or determinations, the Maine Legislature must have intended that protests brought under section 1174(3)(B) be exempt from the mediation requirement.

If the Court were to accept Plaintiff's efforts to distinguish a "protest" from an "action", the Court would have no basis for jurisdiction over Plaintiff's claim. The Court's jurisdiction over this case is based on diversity of citizenship and removal from state court. See 28 U.S.C.A. §§ 1332, 1441. (See D. Notice of Removal at 1–2.) Neither party has objected to this basis of jurisdiction. Title 28 section 1332(a) states that "The district courts shall have original jurisdiction of all civil *actions* where the matter in controversy exceeds the sum or value of $75,000 ..." (emphasis added). Section 1441(a) reads that "... any civil *action* brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court ..." (emphasis added). Thus, to retain jurisdiction, the Court must treat Plaintiff's case as an action.

■ Additionally, even though Plaintiff requests the Court to make a "determination," Plaintiff also has requested an order of enjoinment. (Pl.Compl. at 3.) An order for enjoinment is a form of equitable relief. *See, e.g., Miller v. French,* 530 U.S. 327, 120 S.Ct. 2246, 2252, 147 L.Ed.2d 326 (2000) (noting that enjoinment is within federal courts' "traditional equitable authority"). Thus, by requesting an order of enjoinment, Plaintiff brought its case within the ambit of the mediation provision of section 1173–A.

Notwithstanding this debate over linguistics, the Court understands the phrase "an action for recovery of damages or for equitable relief" to indicate that the Maine Legislature intended section 1173–A to apply to all cases arising under the Maine Motor Vehicle Dealer's Act, because "damages or ... equitable relief" encompass all remedies that a court may provide a litigant. Plaintiffs seek either damages or equitable relief; if a form of relief is not damages, it is equitable relief. The wording "an action for recovery of damages or for equitable relief" is not limiting language, but an inclusive phrase incorporating all actions brought under the Act.

Nothing in the legislative history suggests that the Maine Legislature intended for the mediation requirement of section 1173–A to not apply to actions brought under section 1174(3)(B). *See* L.D. 1747, Summary at 20 (118th Legis.1997) (simply stating that the Act "authorizes mandatory nonbinding mediation as an initial step in dispute resolution"). Rather, The purpose of section 1173–A is to require all motor vehicle franchisees to seek mediation prior to filing lawsuits against franchisors, in an effort to reduce the burden on the judiciary. Maine has adopted similar mediation requirements in other statutes for the same purpose. *See DeRice v. S.D. Warren Co.,* 694 A.2d 450, 452 (Me.1997) (legislative history of Maine Worker's Compensation Act suggests that Legislature intended mediation to "replace litigation whenever possible") (quoting *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 590 (Me.1996)); *Sullivan v. Johnson,* 628 A.2d 653, 656 (Me.1993) (purpose of Maine's Health Security Act's requirement of screening and mediation prior to lawsuit is to identify claims that merit compensation and to encourage early resolution of those claims, and to encourage early withdrawal or dismissal of claims without merit).

The Court sees no logical reason why the Legislature would wish to alleviate the burden on courts caused by claims for money damages or injunctions, but would want to burden the courts with determina-

tions of whether good cause exists to modify franchises. In fact, a protest for determination of good cause arguably is more amenable to mediation rather than civil action because it is more of a preliminary dispute as opposed to a complaint for damages or injunctive relief. *See Woodcock v. Atlass*, 359 A.2d 69, 70 (Me.1976) (declining to issue declaratory judgment in case involving the since-repealed State Employees Appeal Act, because statute required mediation prior to legal proceedings, and to issue declaratory judgment prior to mediation would be "premature judicial intervention"). Therefore, section 1173–A applies to actions brought under section 1174(3)(B).

For the reasons discussed above, the Court finds that Plaintiff was required to make written demand for nonbinding mediation as a prerequisite to filing its lawsuit. Because Plaintiff failed to serve upon Defendant a written demand for mediation, the Court enters summary judgment for Defendant and dismisses Plaintiff's claim without prejudice, allowing Plaintiff to refile its claim when, and if, it complies with the mediation requirement in section 1173–A. Because the Court finds that Defendant is entitled to summary judgment on these grounds, the Court need not discuss Defendant's argument that Plaintiff failed to state a claim by not alleging that Defendant's actions qualify as a threat to modify a franchise under the Motor Vehicle Dealer's Act.[1]

### CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss, treated as a motion for summary judgment, is GRANTED. Plaintiff's claim is hereby ordered DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

---

1. To the extent that Defendant's argument could be construed as arguing that Plaintiff has failed to adequately lay out the factual basis for its claim, the Court finds that Plaintiff's Complaint meets the requirements of a notice pleading. *See* Fed.R.Civ.Pro. 8(a).