2000 ME 153

**KEYBANK NATIONAL ASSOCIATION**

v.

**Edward S. SARGENT et al.**

Orissa Sargent

v.

**KeyBank National Association.**

Orissa Sargent

v.

**Westly R. Williams et al.**

Supreme Judicial Court of Maine.

Argued March 7, 2000.
Decided Aug. 8, 2000.

separate but consolidated actions related to a business loan made by KeyBank to her son, Edward Sargent, and guaranteed by Sargent. Edward defaulted on the loan, leading to KeyBank's foreclosure and eventual sale of Sargent's home to Westly and Carney Williams. Sargent contends that the court (*Mead, J.*) erred (1) in the foreclosure action by denying her M.R. Civ. P. 60(b) motion to set aside the judgment and her post-judgment M.R. Civ. P. 65(a) motion for injunctive relief; (2) in her independent action brought against Key-Bank, Edward Sargent, and Donna Hart, a vice-president of KeyBank, by denying her request for injunctive relief (*Mead, J.*), and in dismissing the remainder of her claims (*Marsano, J.*) pursuant to M.R. Civ. P. 12(b)(6); and (3) in entering a judgment against her (*Marsano, J.*) in her declaratory judgment action against KeyBank and the Williamses. Finding no error or abuse of discretion, we affirm the judgments.

## I. BACKGROUND

[¶ 2] Orissa Sargent's son, Edward, operated his own business as Edward Sargent d/b/a Sargent Farms. On January 19, 1995, Sargent, who was 68 years old, guaranteed a "Commercial Term Note" of $47,500 running from Edward S. Sargent d/b/a Sargent Farms to KeyBank. She also executed a mortgage deed to her home, which was her primary asset, to KeyBank to secure the guarantee. Edward did not pay his mother for her guarantee, and she was not represented by counsel when she signed the guarantee and the mortgage deed. Edward subsequently defaulted on his obligations under the loan, and Key-Bank, naming Orissa and Edward Sargent as defendants, commenced a foreclosure action pursuant to the guarantee and the mortgage, docketed as CV–96–82. *See* 14 M.R.S.A. §§ 6321–6325 (Supp. 1999). In November of 1996, a summary judgment was entered against Sargent in favor of KeyBank. Sargent did not appeal from that judgment.

Joseph L. Ferris (orally), N. Lawrence Willey, Jr., Ferris, Dearborn & Willey, Brewer, for the appellant.

Michael S. Haenn (orally), Bangor, for KeyBank National Association.

Anthony J. Giunta (orally), Ellsworth, for Westly and Carney L. Williams.

Panel: WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Orissa Sargent appeals from adverse judgments entered against her in the Superior Court (Hancock County) in three

## A. The Rule 60(b) Motion

[¶ 3] On April 14, 1997, Sargent, having obtained new counsel, filed a motion for relief from the foreclosure judgment pursuant to M.R. Civ. P. 60(b). Sargent also filed a motion for a temporary restraining order, preliminary injunction, and permanent injunction pursuant to M.R. Civ. P. 65(a) to prevent her from being evicted from her home and having her property sold. The Rule 60(b) motion seeks leave to amend her pleadings and file affirmative defenses and counterclaims based on, among other things, KeyBank's alleged violations of the Equal Credit Opportunity Act (ECOA), *see* 15 U.S.C.A. §§ 1691–1691f (1997 & Supp. 2000), the Improvident Transfers of Title Act (ITTA), *see* 33 M.R.S.A. §§ 1021–1022(1) (1999), and the Maine Consumer Credit Code, Truth-in-Lending provisions, *see* 9–A M.R.S.A. §§ 8–201 to 8–209 (1997 & Supp. 1999). The motion for injunctive relief was based on the same grounds. The court (*Mead, J.*) denied both motions in an order dated June 5, 1997.

## B. Sargent's First Complaint

[¶ 4] On April 14, 1997, Sargent also filed an independent complaint, docketed as CV-97-21, in which she claims that Key-Bank, Donna Hart, and Edward Sargent (1) exerted undue influence on her in violation of the ITTA, *see* 33 M.R.S.A. § 1022(1) (1999); (2) fraudulently induced Sargent to guarantee Edward's loan; (3) failed to provide Sargent with rescission documents, truth-in-lending documents, and other necessary documents; and (4) were unjustly enriched by the transaction.[1] Sargent seeks the rescission of any promissory notes, guarantees, and real estate mortgages, and she sought an order enjoining KeyBank from foreclosing on her property or collecting any debt against her. She also seeks compensatory and punitive damages.

[¶ 5] The complaint alleges that Sargent had a confidential or fiduciary relationship with all three defendants and that the defendants induced Sargent to guarantee the loan because they knew that Edward was currently involved in a property dispute that could impair the ability of his property to serve as collateral and impair his ability to repay the loan. She also claims that the defendants had a duty to reveal that information to her prior to obtaining her guarantee.

[¶ 6] The court denied Sargent's request for injunctive relief, noting that it would be inappropriate to grant injunctive relief in the independent action when the court had previously denied an identical request for relief in CV-96-82, the foreclosure action. The court then dismissed the claims against KeyBank, concluding that they were waived because they were compulsory counterclaims that should have been raised in the foreclosure action. The court also added that "any claim derived from truth-in-lending laws fails to state a claim because the loan at issue was a commercial, not [a] consumer, loan." The court subsequently dismissed Sargent's claims against Donna Hart, holding that her claims against Hart individually were barred because Hart was an agent of Key-Bank and was not subject to individual liability.

## C. Sargent's Second Complaint

[¶ 7] On June 4, 1998, Sargent filed a second complaint in the Superior Court, docketed as CV–98–33, an action for a declaratory judgment. In that complaint, Sargent claims that KeyBank did not comply with the notice provisions of 14 M.R.S.A. § 6323 (Supp. 1999) because in its first notice of public sale, it published a picture of a home other than Sargent's. Naming both KeyBank and the purchasers at the public sale, the Williamses, as defendants, Sargent claims that the notice deficiencies rendered the sale void or voidable.

---

1. A default judgment was entered against Edward Sargent on August 13, 1997.

## D. Consolidation of the Three Actions

[¶ 8] In August of 1998, the court (*Krav-chuk, C.J.*) ordered that the foreclosure action, CV–96–82, and Sargent's two independent complaints, CV–97–21 and CV–98–33, be consolidated. On May 6, 1999, a bench trial in CV–98–33, Sargent's action for a declaratory judgment, was held on the limited issue of whether the public sale was void or voidable. The court (*Marsano, J.*) concluded that KeyBank had adequately complied with the notice requirements of 14 M.R.S.A. § 6323 and that printing the wrong photo in the initial notice was harmless error. The court also held that the Williamses were bona fide purchasers for value and that they were protected by the recording statute. *See* 33 M.R.S.A. § 201 (1999). The court entered final judgment not only in CV–98–33, but also in CV–96–82 and CV–97–21 as well. Sargent appealed in all three cases.

## II. DENIAL OF RULE 60(b) RELIEF

[¶ 9] Sargent contends that the trial court erred in denying her motion for Rule 60(b) relief from judgment. Before addressing whether the trial court properly exercised its discretion in denying Sargent's motion, however, we must first address KeyBank's argument that Rule 60(b) relief is never available when the motion is filed after the 90-day statutory right of redemption has expired.

[¶ 10] Title 14, section 6322 allows a mortgagor a 90-day period after entry of the foreclosure judgment in which to pay the total amount due on the mortgage and redeem the mortgage. *See* 14 M.R.S.A. § 6322 (Supp. 1999). Because the redemp-

tion period begins "to run upon the entry of the judgment of foreclosure," *see* 14 M.R.S.A. § 6322 (Supp. 1999), that period expired in this case on January 30, 1997. Sargent did not file her motion for Rule 60(b) relief until April 14, 1997, nearly two and a half months later.

■ [¶ 11] Because the "right of redemption, once extinguished, cannot be revived by any court, nor can the period of redemption be abridged or enlarged by operation of law," *see Smith v. Varney*, 309 A.2d 229, 232 (Me.1973), KeyBank has argued that allowing Rule 60(b) relief after the expiration of 90-day redemption period is impermissible, as it operates to revive and extend the redemption period. There are exceptional circumstances, however, where a court of equity may provide relief, even after the 90-day redemption period has expired. *See Smith v. Varney*, 309 A.2d at 232. Rule 60(b) itself provides that equity may be invoked to provide relief from judgment in certain circumstances, and section 6322 does not preclude such relief.[2] In this case, the trial court did not abuse its discretion in finding that exceptional circumstances were not present in this case and denying Rule 60(b) relief from judgment.

[¶ 12] Sargent argues that the failure of KeyBank to respond to a request for documents made prior to the entry of the foreclosure judgment amounts to fraud, misrepresentation or other misconduct that warrants relief from judgment pursuant to M.R. Civ. P. 60(b)(3).[3] She also argues that KeyBank's violations of the ITTA, *see* 33

---

**2.** The fact that the redemption period has run, however, may impact on the court's decision to grant such relief. *See* M.R. Civ. P. 60(b) (stating that relief is to be granted "upon such terms as are just").

**3.** Rule 60(b) provides:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following rea-

sons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment.

M.R. Civ. P. 60(b).

M.R.S.A. §§ 1021–1022(1) (1999), the ECOA, *see* 15 U.S.C.A. § 1691(a)(1) (1999), and the Maine Consumer Credit Code-- Truth-in-Lending Act, *see* 9–A M.R.S.A. § 8–204 (1997) require the court to grant her relief from judgment.

[¶ 13] The party seeking relief from judgment pursuant M.R. Civ. P. 60(b) bears the "burden of proving that the judgment should be set aside." *See Beck v. Beck*, 1999 ME 110, ¶ 6, 733 A.2d 981, 983. We review the denial of a Rule 60(b) motion for abuse of discretion and will set aside the judgment only if the failure to grant the relief "works a plain and unmistakable injustice against the defendant." *See Harris v. PT Petro Corp. v. Ballot*, 650 A.2d 1346, 1348 (Me.1994).

[¶ 14] At the hearing on the Rule 60(b) motion, Sargent argued that fraud related to the underlying transaction was the basis for the relief she was seeking. On appeal, she argues for the first time that there was fraud or misrepresentation *during the course of the foreclosure proceedings* that entitled her to relief. Because this issue is raised for the first time on appeal, it is not properly preserved.[4] *See Rairdon v. Dwyer*, 598 A.2d 444, 445 (Me. 1991).

[¶ 15] Sargent also argues that Rule 60(b) relief was warranted simply because she was raising valid defenses and counterclaims to the foreclosure action. We disagree. " 'It is necessary that judgments, especially those settling property rights ... have a high degree of stability and finality.' " *Kolmosky v. Kolmosky*, 631 A.2d 419, 421 (Me.1993) (quoting *Merrill v. Merrill*, 449 A.2d 1120, 1125 (Me.1982)) (alterations in original). Moreover, "Rule 60(b) is not intended as an alternative method of appeal." *Id.* Accordingly, because Sargent did not raise her affirmative defenses and counterclaims in the foreclosure proceedings, she is barred from using Rule 60(b) to raise those issues. *See McKeen and Assocs. v. Department of Transp.*, 1997 ME 73, ¶ 6, 692 A.2d 924, 926 (holding that where party neither opposed summary judgment nor challenged the judgment on direct appeal, principles of res judicata barred Rule 60(b) relief).

## III. DISMISSAL OF SARGENT'S CLAIMS IN CV–97–21

### A. Claims Against KeyBank

[¶ 16] Sargent contends that the trial court erred in dismissing her complaint in CV–97–21, in which she alleges that Key-Bank defrauded her, violated provisions of the ITTA, *see* 33 M.R.S.A. §§ 1021–1022(1) (1999), and violated truth-in-lending provisions, *see* 9–A M.R.S.A. §§ 8–201 to 8–209 (1997 & Supp. 1999). She argues that those claims were not compulsory counterclaims pursuant to M.R. Civ. P. 13(a)(1).[5]

---

**4.** Also unpreserved is KeyBank's argument that Sargent's Rule 60(b) motion was not timely filed, as that issue was not raised in the trial court.

Though the record is not entirely clear, there is some indication that Sargent did not learn of the existence of the fraud or misrepresentation she alleges occurred during the course of the foreclosure judgment until after the court denied her Rule 60(b) motion for relief. Even if that were the case, it was incumbent upon Sargent to file an additional Rule 60(b) motion to allow the trial court the opportunity to decide the issue.

**5.** Rule 13 provides, in part:

(a) **Compulsory Counterclaims.**
(1) *Pleadings.* Unless otherwise specifically provided by statute .... a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

. . . .

(e) **Counterclaim Maturing or Acquired After Pleading.** A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.

(f) **Omitted Counterclaim.** When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader

[¶ 17] "Under principles usually analogized to *res judicata*, a defendant who fails to interpose a compulsory counterclaim as required by Rule 13(a) is precluded from later maintaining another action on the claim after rendition of judgment." *Bartlett v. Pullen*, 586 A.2d 1263, 1265 (Me.1991). When "the second claim arises out of the *same transaction* as the first, previously-litigated claim," the second claim is barred by M.R. Civ. P. 13(a)(1). *See DiPietro v. Boynton*, 628 A.2d 1019, 1022 (Me.1993).

> "What factual grouping constitutes a "transaction" [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they from a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id.* (quoting *Beegan v. Schmidt*, 451 A.2d 642, 645 (Me.1982)) (alterations in original).

[¶ 18] In the present case, the foreclosure action by KeyBank and all of the claims raised by Sargent in CV–97–21 arise from a single transaction, Sargent's guarantee of Edward's loan, and her grant to KeyBank of a mortgage interest in her home to secure the guarantee. Accordingly, Sargent's claims against KeyBank in CV–97–21 should have been raised in the foreclosure action and the trial court did not err in dismissing those claims pursuant to M.R. Civ. P. 13.[6]

[¶ 19] Sargent contends, however, that because the foreclosure statute and M.R. Civ. P. 80A define the pleadings as containing a complaint and an answer, and make no reference to counterclaims, the trial court had no authority to hear counterclaims in the foreclosure action.

[¶ 20] The foreclosure action brought by KeyBank is a "civil action." *See* M.R.S.A. § 6321 (Supp. 1999). "[A]ll suits of a civil nature" are governed by the Maine Rules of Civil Procedure, *see* M.R. Civ. P. 1, and there is no indication in 14 M.R.S.A. § 6321 (Supp. 1999) that the legislature intended otherwise in foreclosure proceedings. In fact, the foreclosure statute requires that the action be commenced and service of process be made "in accordance with the Maine Rules of Civil Procedure." *See* 14 M.R.S.A. § 6321 (Supp. 1999).

[¶ 21] Although Sargent is correct that there are certain actions that can be filed in the Courts of this State in which counterclaims are not allowed, in those cases that stricture is stated explicitly in the statute creating the action. Two examples are actions for forcible entry and detainer and actions for divorce. In an action for forcible entry and detainer, all counterclaims are expressly forbidden. *See* M.R.

---

may by leave of court set up the counterclaim by amendment.
M.R. Civ. P. 13.

6. Sargent also argues that 14 M.R.S.A. § 859 (Supp. 1999) operates to allow her to bring her claims in an independent action. She contends that because KeyBank fraudulently concealed certain documents in the foreclosure action that would have alerted her to the existence of the claims raised in CV–97–21, she was not required to plead those claims as counterclaims in the foreclosure action. Section 859 provides that where a potentially liable party has fraudulently concealed a cause of action from a person entitled to bring that action, the action may be brought at any time within six years of the discovery of the action. *See* 14 M.R.S.A. § 859 (Supp. 1999). Pursuant to section 859, however, the statute of limitations begins to run "when the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *See Westman v. Armitage*, 215 A.2d 919, 922 (Me.1966). In this case, Sargent had already brought her independent claim for relief when she discovered what she alleges to be fraudulently concealed documents, documents that she asserts bolster her claim for fraud relating to the underlying transaction. Since she already knew enough about her fraud claim to have brought the independent claim for fraud *before* the discovery of the documents, she cannot argue that she did not know about the claims prior to their discovery.

Civ. P. 80D(g) ("Forcible entry and detainer actions shall not be joined with any other action, nor shall a defendant in such action file any counterclaim."). In actions for divorce, only certain counterclaims are permitted. *See* M.R. Civ. P. 80(b).

[¶ 22] Rule 80A, which governs foreclosure actions, *see* M.R. Civ. P. 80(g), requires that "[a]ll defenses shall be made by answer as in other actions," *see* M.R. Civ. P. 80A(d). It does not make any reference to counterclaims. *See id.* Given the clarity with which the rules spell out those circumstances when counterclaims are forbidden, however, the only conclusion that can be drawn from the failure to explicitly address counterclaims in Rule 80A is that counterclaims are governed by M.R. Civ. P. 13. Accordingly, Sargent's contention that the rules forbid courts from entertaining counterclaims in foreclosure actions is without merit.[7]

[¶ 23] Sargent also contends that her claim under the ITTA did not ripen until her home was sold by the bank to satisfy the foreclosure judgment, making M.R. Civ. P. 13 inapplicable to that claim. We disagree.

[¶ 24] Whether a claim is ripe is an issue of law. *See generally Wagner v. Secretary of State*, 663 A.2d 564, 568 (Me. 1995). A case is ripe if it is fit for judicial decision. *See Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384, 385 (holding that claim against insurance company based on its duty to defend ripens when complaint is filed against insured). A case is fit for judicial decision if it "presents a concrete and specific legal issue" that "has a direct, immediate, and continuing impact" on the parties. *See Maine Pub. Serv. Co. v. Public Utils. Comm'n*, 524 A.2d 1222, 1226 (Me.1987).

[¶ 25] All of the claims raised by Sargent in CV-97-21 were ripe for judicial consideration when Sargent executed the guarantee and accompanying security agreement. Each of those claims was based on alleged wrongs committed by KeyBank in both inducing Sargent to guarantee Edward's loan and in conducting the transaction whereby Sargent conveyed to KeyBank a security interest in her property. The moment Sargent completed the transaction, her legal obligations to KeyBank had a direct and continuing impact on her, and she could have sought judicial relief. *See id.* Accordingly, those claims were ripe when KeyBank filed its foreclosure action, and they should have been raised as counterclaims to that action pursuant to M.R. Civ. P. 13.

**B. Claims Against Hart**

[¶ 26] The trial court dismissed all of Sargent's claims against Donna Hart. As an initial matter, we agree with Sargent that because Hart was not a party to the foreclosure action and because that action addressed issues different than those raised in her complaint against Hart, her claims against Hart are not barred by Rule 13 or the principles of issue and claim preclusion.

[¶ 27] Rule 13(a)(1) provides that the pleadings must state any counterclaim "the pleader has against any *opposing* party." *See* M.R. Civ. P. 13(a)(1) (emphasis added). Accordingly, Sargent was not required to plead her claims against Hart in the foreclosure action in which Hart was not a party. *See id.*

[¶ 28] Nor are those claims barred by principles of issue or claim preclusion. Issue preclusion bars relitigation of issues that were decided by a prior judgment, and claim preclusion bars relit-

---

7. Sargent also argues that because her claims for fraud, misrepresentation, and violation of the ITTA "are all actions that can be brought independently of the foreclosure action," they should not have been dismissed because they are not compulsory counterclaims. The fact that those actions can be brought independently of a foreclosure action simply highlights the difference between a defense and a counterclaim. It does nothing to change the analysis of when those claims must be plead.

igation of a claim only if the same parties were involved in both actions. *See Machias Sav. Bank v. Ramsdell,* 1997 ME 20, ¶ 11, 689 A.2d 595, 599. None of the issues raised against Hart, however, were litigated in the foreclosure action, making issue preclusion inapplicable. *See id.* Likewise, Sargent's claims are not barred by claim preclusion, as Hart was not a party to the foreclosure action. *See id.*

[¶ 29] In reviewing the dismissal of Sargent's claims against Hart pursuant to M.R. Civ. P. 12(b)(6), we examine Sargent's complaint in a light most favorable to her, as we must, to determine if she has alleged facts that would entitle her "to relief pursuant to some legal theory." *See Danforth v. Gottardi,* 667 A.2d 847, 848 (Me.1995).

■■■ [¶ 30] In the complaint filed in CV–97–21, Sargent alleges that she was not provided certain truth-in-lending documents regarding her right to rescind the guarantee transaction. Because this transaction was a guarantee of a commercial loan, however, it was not a consumer transaction and federal and state truth-in-lending statutes are not applicable. *See* 15 U.S.C.A. § 1635(a) (1994) (noting that federal disclosure statute only applies to "consumer credit transaction[s]"); 15 U.S.C.A. § 1603(1) (1994) (exempting from disclosure requirements "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes); 9–A M.R.S.A. § 3–206(1), (7) (1997) (stating that disclosure must only be given to "cosigners" when they are involved in "consumer credit transactions"); 9–A M.R.S.A. § 1–301(14)(A) (Supp. 1999) (defining as consumer credit transactions those loans made to "person other than an organization" where debt is "incurred primarily for a personal, family or household purpose").

■■■ [¶ 31] Sargent also seeks to hold Hart liable to her under 33 M.R.S.A. § 1022 (1999), alleging as she does, claims of fraud and breach of a confidential rela-

tionship, and construing the complaint most favorably in her favor, breach of the common law presumption of undue influence arising from a confidential relationship she had with Hart. *See Ruebsamen v. Maddocks,* 340 A.2d 31, 35 (Me.1975). Sargent's general allegation of a confidential relationship, however, is an insufficient basis for establishing the existence of such a relationship with Hart, who is a bank employee. *See Bryan R. v. Watchtower Bible & Tract Soc.,* 1999 ME 144, ¶ 20, 738 A.2d 839, 846. Sargent is required to set out "specific facts regarding the nature of the relationship alleged to have given rise to a fiduciary duty in order to determine whether a duty may exist at law." *Id.* This she failed to do, and that failure is fatal to her claim of common law presumption of undue influence arising from a confidential relationship. *See Ruebsamen v. Maddocks,* 340 A.2d at 35.

[¶ 32] In her allegation pursuant to the statute, Sargent alleges that she is entitled to the presumption of undue influence raised by 33 M.R.S.A. § 1022 (1999).

> In any transfer of real estate … for less than full consideration by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it shall be presumed that the transfer was the result of undue influence, unless the elderly dependent person was represented in the transfer by independent counsel.

33 M.R.S.A. § 1022(1) (1999).

■■■ [¶ 33] Even if Sargent's allegations were sufficient to bring her within the statutory provisions, and we were to conclude that the statute is not limited to raising the presumption against the actual transferee of the property interest, in this case KeyBank, Sargent cannot obtain any relief against Hart pursuant to the ITTA. The only relief available under the ITTA is "relief enabling the elderly dependent person to avoid the transfer, including the rescission or reformation of a deed or other instrument, the imposition of a con-

structive trust on the property or an order enjoining use of or entry on property or commanding the return of property." *See* 33 M.R.S.A. § 1023(2) (1999). Because the ITTA offers no avenue of obtaining relief from Hart, that claim was properly dismissed.

## III. JUDGMENT FOR DEFENDANTS IN CV–98–33

[¶ 34] Sargent claims in CV–98–33 that because the first of the three statutorily required notices of public sale was published with a photograph of a house different than her house, KeyBank must begin the entire foreclosure process anew.[8] We disagree.

[¶ 35] We generally review a trial court's refusal to set aside a foreclosure sale "only for manifest injustice." *See Farm Credit of Aroostook v. Sandstrom,* 634 A.2d 961, 962–63 (Me.1993). "The findings of fact that support the trial court's ultimate decision are reviewed only for clear error." *Id.* at 963. Sargent, however, contends that a different standard of review should apply. She argues that the entire foreclosure process is a unified action requiring strict adherence to all statutory requirements. She contends that failure to follow even a single requirement invalidates the entire foreclosure.

[¶ 36] We have said that "[i]n order to effect a legal foreclosure all steps required by the statute must be strictly performed." *See Winter v. Casco Bank and Trust Co.,* 396 A.2d 1020, 1024 (Me. 1979); *see also Stafford v. Morse,* 97 Me. 222, 223-25, 54 A. 397, 398 (1902). In *Winter,* the Court held that even the minor procedural requirement that the foreclosure notices be attested could not "be judicially excised from this statute." *See Winter v. Casco Bank and Trust Co.,* 396 A.2d at 1022. Similarly, in *Stafford,* we held that

in a foreclosure by publication, because there was no record evidence that the foreclosure had been recorded within 30 days of the last publication, as required by statute, the foreclosure proceedings were ineffective to give the mortgagee absolute title. *See Stafford v. Morse,* 97 Me. at 226–27, 54 A. at 399.

[¶ 37] *Stafford* and *Winter* stand for the proposition that technical errors in procuring a judgment of foreclosure may render that judgment void. Sargent, however, wants the holdings in those cases to be extended to apply to the entire foreclosure process, including the sale following the judgment of foreclosure. She relies on *Key Bank of Maine v. Walton,* 673 A.2d 701, 703 (Me.1996) to support her position. In *Walton,* we held that "[t]he judicial mortgage foreclosure procedure set forth in sections 6321–25 establishes a unified civil action for foreclosing the mortgagor's equity of redemption and collecting from the mortgagor any deficiency." *Id.* That language, however, must be understood in the context of a determination that a party who challenged and participated in proceedings regarding the foreclosure sale of his property could not argue for the first time on appeal that the judgment of foreclosure was void because the court lacked personal jurisdiction over him. *See id.* In those circumstances, such a holding makes sense. We cannot apply the "unified action" rationale to cases such as this, however, where there is no allegation of any defect in the judgment of foreclosure itself, but a defect is alleged only in the sale following the foreclosure.

[¶ 38] The notice of public sale was published after the redemption period expired. After the redemption period expires, "all rights of the mortgagor to possession terminate." *See* 14 M.R.S.A. § 6323(1) (Supp. 1999). Accordingly, any

---

8. Title 14, section 6323 provides that, after a judgment of foreclosure is entered and the period of redemption expires, "the mortgagee shall cause notice of a public sale of the premises stating the time, place and terms of the sale to be published once in each of 3 successive weeks in a newspaper of general circulation in the county in which the premises are located." *See* 14 M.R.S.A. § 6323 (Supp. 1999).

error in the *sale* process should not serve as grounds to set aside the foreclosure *judgment* itself. The "strict compliance" doctrine is limited to those procedures leading to the foreclosure judgment. *See Winter v. Casco Bank and Trust Co.,* 396 A.2d at 1024; *Stafford v. Morse,* 97 Me. at 223-25, 54 A. at 398. When the challenge is to the procedures used to conduct the foreclosure sale, the proper analysis for the trial court is whether it would be equitable to set aside the sale given the procedures that were employed by the mortgagee. *See Farm Credit of Aroostook v. Sandstrom,* 634 A.2d at 962-63 (noting that action to set aside foreclosure sale "presumably rel[ies] on the equitable power granted to the court in actions to foreclose mortgages"). In such a case we are limited to reviewing factual findings for clear error and reviewing the court's use of discretion for "manifest injustice." *See id.*

■ [¶ 39] The trial court found that the wrong photo had been included in the first of the three notices of public sale. It also found, however, that the incorrect picture was of a similar one story house with "indistinguishable characteristics" from Sargent's home; that the property was adequately marked with signs on the days leading up to the sale; that "the notice of sale included all of the required essential elements called for by the statutes, specifically the book and page, the tax map and the street and town;" and that the error was harmless. In reaching its decision the court relied on expert testimony, and its findings are not clearly erroneous.

The entry is:

Judgments affirmed.