STATE OF MAINE

Cumberland, ss.

BUSINESS AND CONSUMER COURT
AMH -CUM- 4/13/2012

FIRST TRACKS INVESTMENTS, LLC,

Plaintiff

v.                                                    Docket No. BCD-CV-11-31

SUNRISE SCHOOLHOUSE, LLC, AND
SALLY MERRILL,

Defendants

## ORDER ON PLAINTIFF'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

This is an action arising out of a commercial foreclosure conducted pursuant to a power of sale under 33 M.R.S. § 501-A and 14 M.R.S. § 6203-A. The mortgagee, Plaintiff First Tracks Investments, LLC ("First Tracks"), commenced the action to recover a deficiency judgment against the mortgagor, Defendant Sunrise Schoolhouse, LLC ("Sunrise Schoolhouse"), and a guarantor, Defendant Sally Merrill. In response, the Defendants filed counterclaims for damages based on alleged irregularities in the Plaintiff's power of sale foreclosure process.

Before the court are Plaintiff's motion to dismiss and motion for summary judgment; Defendants' filings in opposition thereto, and Plaintiff's reply. The court held oral argument on the motions April 5, 2012, and made oral rulings that are reflected in this Order.[1]

---

[1] The court's oral rulings are incorporated by reference in this Order. However, any discrepancy or conflict between the oral rulings and this Order shall be resolved in favor of the contents of this Order.

1

The parties present very different pictures of the underlying sequence of events.

From the Plaintiff's perspective, Defendants have utterly failed to live up to their loan and guarantee obligations and had ample opportunity to avoid the foreclosure sale of which they complain. Plaintiff defends the foreclosure sale procedure it pursued as sufficient under applicable law, and argues that there is no evidence that a foreclosure sale conducted as the Defendants say this one should have been would have resulted in a different outcome—a bid higher than what Plaintiff bid as the sole bidder at the sale.

Defendants characterize the entire sequence of events in essence as a predatory scheme by Eric Cianchette, the principal of Plaintiff First Tracks. The Defendants say he acquired First Tracks at the inception of the foreclosure process in order to acquire its interest in the loan and mortgage to Sunrise Schoolhouse as guaranteed by Ms. Merrill. The Defendants say First Tracks then orchestrated a stealth foreclosure sale by means of a misleading notice of sale and a secretive sale procedure, in order to acquire the Sunrise Acres Farm property for far less than its real value.

Some aspects of the undisputed record—the mistakes, omissions and vagueness in the notice of sale, and the decision to hold the sale in a place that did not comply with the "on site" location indicated in the notice—lend support to the troubling picture painted by Defendants.

On the other hand, First Tracks denies any such scheme, and other aspects of the record do not support the Defendants' theory. The history of this case confirms

2

that the Defendants failed to honor their loan and guarantee obligations for eighteen months. Their theory about First Tracks's motives is based on inference rather than any direct evidence. Moreover, First Tracks has waived any deficiency claim against either Defendant.

*Case History*

The following summary of the facts is based on the parties' statements of material fact. The material facts set forth below are largely undisputed.

Plaintiff First Tracks and Defendant Sunrise Schoolhouse are Maine limited liability corporations, and Defendant Sally Merrill is the only member of Sunrise Schoolhouse. On April 18, 2008 Sunrise Schoolhouse obtained a mortgage loan for $800,000 from First Tracks. The loan was supported by a mortgage guaranty from Sally Merrill. On July 1, 2008 First Tracks loaned Sunrise Schoolhouse an additional $50,000, as reflected by the first allonge to the promissory note and first amendment to the mortgage, and on September 2, 2008 First Tracks loaned Sunrise Schoolhouse an additional $25,000 as reflected by the second allonge to the promissory note and second amendment to the mortgage. The total loan from First Tracks to Sunrise Schoolhouse totaled $875,000.

The property subject to the mortgage consisted of a large farm of about 145 acres in the Town of Cumberland, with more than a mile of road frontage on Winn Road, Range Road, and Cross Road. Known as the Sunrise Acres Farm, the property comprises four separately described parcels. The property is mostly fields and woods, but there are also several structures, including a large barn located on Winn Road that serves as the functional central location for the farm. A sign identifying

3

the property as the Sunrise Acres Farm is at the barn. The barn, which sits on a rise, affords a view of much of the property's acreage. The barn is the largest and most prominent building on the mortgage property, and is the only location that has parking for multiple vehicles.

Aside from interest payments from an escrow fund, the Defendants did not make any payments on the debt to First Tracks. As a result, First Tracks sent a notice of default to the Defendants on June 25, 2009, and sent a notice of sale, as well as a deficiency notice, to the Defendants on December 9, 2009. The notice of sale was also published in compliance with the Maine power of sale statute. *See* 14 M.R.S. § 6203-A(1).

The notice of sale provided for the property to be sold as a whole, despite the fact that it consisted of four parcels. The notice provided that the sale of the property would be held January 4, 2010 "on site," but for unexplained reasons did not specify a more precise location on the 145-acre site. Because of the barn's prominence, the Defendants say that the vague "on site" location mentioned in the notice must reasonably be taken to refer to the barn, as opposed to anywhere else on the property, and the record indicates that they are right.

The notice of sale was inaccurate or incomplete in several respects. It incorrectly identified the address of the antique schoolhouse as being part of the sale property, for instance, although it did exempt the schoolhouse property from the description of property being sold. It failed to mention the acreage involved or the fact that the property being sold consisted of the Sunrise Acres Farm.

The notice of sale set forth requirements for prospective bidders—in order to

4

qualify to submit a bid, for example, a prospective bidder would be required to present $50,000 in cash or certified check. The notice also provided contact information for interested persons to obtain more information from First Tracks's legal counsel. There is no indication that anyone made such an effort before the sale.

In preparation for the sale, First Tracks did no advertising beyond publishing the notice of sale three times, placed no signs before or on the day of sale, and made no effort to publicize the sale or generate interest in the property.

The sale was conducted as scheduled, at about 8:30 a.m. on January 4, 2010, by the attorney representing First Tracks at the time. (Counsel for the parties in this case are not the counsel who represented the parties at the time). He went to the intersection where Cross Road, Range Road, and Winn Road meet, and where the eponymous antique schoolhouse owned by Sunrise Schoolhouse stands. Neither the schoolhouse nor the roadway beside it was part of the mortgaged property. The schoolhouse is down the road from the large barn that is the functional center of the farm, but cannot actually be seen from the parking area at the barn. There is little, if any parking, at the schoolhouse.

The First Tracks attorney parked his vehicle in the road beside the schoolhouse, next to a snowbank that had accrued after a major snowstorm a couple of days before, and conducted the sale while standing alone in the roadway beside his vehicle.[2] No one else participated or stopped to observe. As the sole bidder at the sale, First Tracks purchased the property for $850,000. The total amount of the debt owed to First Tracks by the Defendants as of January 4, 2010 was $990,023.97.

[2] Defendants evidently are unwilling to concede that First Tracks's attorney actually appeared in the vicinity of the schoolhouse to conduct the sale, but they have not proffered any evidence contravening First Tracks's account of how the sale was conducted.

5

Meanwhile, back at the Sunrise Acres barn, several interested persons had gathered, based on the reasonable assumption that the sale would be held there. However, no one waiting at the barn was prepared to present $50,000 in the form of cash or certified check at the sale in order to qualify to bid. At least one of those waiting at the barn had come intending to bid on the property and had brought a personal check to make a deposit. However, the check was not certified, and he did not have enough funds in his checking account to issue a check for $50,000.

Because the schoolhouse cannot be seen from the barn parking area, none of those waiting at the barn was aware that First Tracks's attorney was conducting a foreclosure sale down the road. After the group had waited for some time at the barn, the Defendants' attorney at the time was notified that no sale had taken place, and he contacted First Tracks's counsel via e-mail to ask what had happened. At least one other person, not identified in this record, contacted First Tracks's counsel by telephone to complain about not having been able to find the sale.

First Tracks's counsel filed a post-sale affidavit and First Tracks took possession of the property. The record does not indicate that either Defendant commenced legal action to contest the sale or seek to set it aside. First Tracks began making significant improvements to the property.

First Tracks filed a complaint against the Defendants for the amount of deficiency on June 16, 2010. The Defendants' answer on July 6, 2010 contained no affirmative defenses or counterclaims, but on January 13, 2011, more than a year after the sale, the Defendants filed a motion to amend as well as to assert counterclaims. The Defendants' motion to amend was granted on March 7, 2011.

6

The Defendants have raised five counterclaims: I) breach of contract, II) wrongful foreclosure, III) unjust enrichment, IV) conversion, and V) trespass.

The Plaintiff's pending motion is presented as both a motion to dismiss under Rule 12(b)(6) of the Maine Rules of Civil Procedure and a motion for summary judgment under Rule 56. The Rule 12(b)(6) motion applies to all of the amended counterclaims of Sally Merrill, as well as Counts II, III, and IV of the amended counterclaims of Sunrise Schoolhouse. The Plaintiff's motion seeks summary judgment on the issue of whether the deficiency claim arises out of a lawful commercial foreclosure and valid exercise of a statutory power of sale, and also seeks summary judgment on any and all counts of both Defendants' counterclaims that are not dismissed under Rule 12(b)(6).

At oral argument Plaintiff withdrew its deficiency claims. Plaintiff's waiver of deficiency was explicitly premised and conditioned on the court's stated intention to rule in Plaintiff's favor, meaning that the claims could be reinstated if summary judgment for Plaintiff were not granted or did not stand on appeal.

The Defendants have voluntarily withdrawn Count IV (conversion) and Count V (trespass) of their amended counterclaims. Defendants' Memorandum in Opposition at 7 n.3. In addition, the Defendants have stated that the counterclaims in Counts I (breach of contract) and Count II (wrongful foreclosure) are brought by Sunrise Schoolhouse only, rather than by both it and Sally Merrill. *Id.* at 8 n.4, 22 n.7. Thus, the only claims left to be decided are Sunrise Schoolhouse's counterclaims for breach of contract, wrongful foreclosure and unjust enrichment, and Sally Merrill's unjust enrichment counterclaim.

7

*Discussion*

*1. Standards of Review*

Because Plaintiff's motion is brought under both Rule 12(b)(6) and Rule 56 of the Maine Rules of Civil Procedure, it invokes the differing standards of review under the two different rules.

A Rule 12(b)(6) motion to dismiss does not address factual issues and instead tests the legal sufficiency of the pleading to which it is directed, taking all material allegations of the pleading to be true for purposes of the motion. *See Livonia v. Town of Rome*, 1998 ME 39, ¶5, 707 A.2d 83, 85. "Dismissal of a civil action is proper when the complaint fails 'to state a claim upon which relief can be granted.'" *Bean v. Cummings*, 2008 ME 18, ¶7, 939 A.2d 676, 679 (citing M.R. Civ. P. 12(b)(6)).

In determining whether a motion to dismiss should be granted, the court considers "the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶8, 902 A.2d 830, 832. The facts alleged are treated as admitted for purposes of the motion, and they are viewed "in the light most favorable to the [non-moving party]." *Id.* The court should dismiss a claim only "when it appears beyond a doubt that the [non-moving party] is not entitled to relief under any set of facts that he [or she] might prove in support of his [or her] claim." *Id.* (quoting *Johanson v. Dunnington*, 2001 ME 169, ¶5, 785 A.2d 1244, 1246).

A motion for summary judgment must establish that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶4, 770 A.2d 653,

8

655. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶2, 845 A.2d 1178, 1179). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)). Summary judgment is appropriate on issues such as motive or intent "if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer v. Dept. of Transp.*, 2008 ME 106, ¶14, 951 A.2d 821, 825 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)) (quotations omitted).

To survive a motion for summary judgment on a claim as to which the non-moving party has the burden of persuasion, the non-moving party must make out a *prima facie* case on each element of the claim that the motion puts into contention. *See Quirion v. Geroux*, 2008 ME 41, ¶9, 942 A.2d 670, 673 (negligence claim); *Reliance Nat'l Indem. v. Knowles Indus. Servs. Inc.*, 2005 ME 29, ¶9, 868 A.2d 220 (subrogation); *Rippett v. Bemis, supra*, 672 A.2d at 84 (defamation).

Maine's civil rules provide for a motion made under Rule 12 to be "converted" into a Rule 56 motion in certain circumstances. *See Beaucage v. City of Rockland*, 2000 ME 184, ¶5, 760 A.2d 1054, 1056; *In re Magro*, 655 A.2d 341, 342 (Me. 1995). *See also* M.R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").

9

However, the conversion dynamic seems less meaningful when a party makes one motion under both rules.

The Rule 12(b)(6) component of Plaintiff's motion has practical application only to the wrongful foreclosure cause of action in Count II of the counterclaim. Because breach of contract and unjust enrichment are clearly recognized causes of action, viewed in a light most favorable to the Defendants, Counts I and III state cognizable claims. Mainly for that reason, the court elects to focus on the summary judgment argument because it is applicable to all of the counterclaims.

2. *The Validity of the Sale*

Plaintiff's motion not only addresses the counterclaims; it also seeks a determination of the validity of the sale. Plaintiff's waiver of its deficiency claim would make it unnecessary to decide that question, but it remains in contention as a result of the Defendants' counterclaims.

The general rule is that, "[f]or a mortgagee to legally foreclose, all steps mandated by statute must be strictly performed." *Camden Nat'l Bank v. Peterson*, 2008 ME 85, ¶ 21, 948 A.2d 1251, 1257, *citing Keybank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 36, 758 A.2d 528, 537.

In a case involving a foreclosure by civil action, the Law Court has indicated that "the 'strict compliance' doctrine is limited to those procedures leading to the foreclosure judgment" and does not extend to the sale procedure. *Keybank National Association v. Sargent, supra*, 2000 ME 153 at ¶ 38, 785 A.2d at 538 (mortgagee's use of the wrong photo of a property in a notice of public sale constituted harmless error). However, the court's stated rationale for not requiring strict compliance in

10

the post-judgment foreclosure sale procedure is that, in a foreclosure by civil action, the mortgagee's right of redemption has already expired when the foreclosure sale takes place. *See id., citing* 14 M.R.S.A. § 6323(1) ("all rights of the mortgagor to possession terminate" when right of redemption expires).

Although also regulated by statute, a power of sale foreclosure differs from a foreclosure by civil action in two critical respects: it is controlled by the mortgagee without the judicial oversight inherent in a foreclosure by civil action, and the sale itself operates to terminate the mortgagor's rights in the property. *See* 33 M.R.S. § 501-A ("such sale shall forever bar the mortgagor and all persons claiming under it from all right and interest in the mortgaged premises, whether at law or in equity"). Thus, the rationale for dispensing with the rule of strict compliance in the sale procedure is absent in a power of sale foreclosure.

Strict compliance with applicable law and the mortgage instrument is required of a mortgagee throughout the entire power of sale foreclosure process. *See Shillaber v. Robinson,* 97 U.S. 68, 78 (1877) ("the validity of the sale being wholly dependent on the power conferred by the instrument, a strict compliance with its terms is essential"); *United States Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 646, 941 N.E.2d 40, 49-50 (2011) ("Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight, we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void.'") (*quoting Moore v. Dick,* 187 Mass. 207, 211, 72 N.E. 967 (1905)).

11

The Defendants' counterclaims focus on the power of sale procedure that First Tracks employed in this case, including the notice, the sale and the post-sale affidavit. "When the challenge is to the procedures used to conduct the foreclosure sale, the proper analysis for the trial court is whether it would be equitable to set aside the sale given the procedures that were employed by the mortgagee." *Keybank National Association v. Sargent, supra,* 2000 ME 153 at ¶ 38, 785 A.2d at 538, *citing Farm Credit of Aroostook v. Sandstrom,* 634 A.2d 961, 962-63 (Me. 1993) (action to set aside foreclosure sale "presumably relies on the equitable power granted to the court in actions to foreclose mortgages").

In this case, the Defendants are not seeking to set aside the sale. Instead, the Defendants are seeking an award of damages for the loss of their equity in the property that they assert resulted from the irregularities in the Plaintiff's sale. The Defendants seek damages in the amount they claim they should have realized from the sale over and above their debt to First Tracks, had the property sold for an amount closer to the estimated fair market value of the property.

Although the just-quoted reference to how a court analyzes a challenge to a foreclosure sale suggests that the focus is on an equitable remedy, there appears no reason why a power of sale foreclosure sale conducted in violation of law or in breach of the mortgage instrument could not be the basis for a damages claim. *See* 4-37 Powell on Real Property §37.42 ("a wrongful sale is actionable at law and the mortgagor may recover damages, measured by the value of his lost equity").

However, the fact that the Defendants seek a legal remedy in the form of damages rather than equitable relief is crucial to this case, because it means that the

12

Defendants have to prove more than inequity in the foreclosure sale procedure sufficient to justify setting aside the sale—they have the burden as well to prove their damages, and also to prove a causal connection between irregularities in First Tracks's sale procedure on the one hand and their damages on the other.

The Defendants have raised issues regarding the notice of sale, the location and manner of the sale, the decision to sell the property as a whole, the bid price in relation to the value of the property at the time, and the post-sale affidavit.

Some of their concerns merit little discussion. For example, the issues they raise with the post-sale affidavit likely are not valid—nothing in the statutes requires the post-sale affidavit to be based on personal knowledge, for instance—and also the post-sale affidavit has no real bearing on the equities of the sale or on damages. The Defendants' claim that the sale should have been postponed as a result of a snowstorm that was well over by the time of sale is also wanting in merit.

Other issues have more bearing, but, standing alone at least, do not lend substantial support to the Defendants' position. The amount of Fair Tracks's bid, standing alone, does not call into doubt the validity of First Tracks's sale procedure, because the bid price was close to the total amount of outstanding debt, and about half what the Defendants say was the market value of the property at the time. The Law Court has held "price inadequacy is generally an insufficient basis on which to challenge the reasonableness of a sale unless other factors exist, such as fraud, unfairness, or other irregularity." *Bar Harbor Bank & Trust v. The Woods at Moody, LLC*, 2009 ME 62, ¶ 20, 974 A.2d 934.

13

Likewise, First Tracks's decision to sell the property as a whole, standing alone, is insufficient because divisible property need not always be sold piecemeal in a power of sale foreclosure, although a foreclosing mortgagee cannot sell more of the property than is necessary to satisfy the debt:

> As a general rule, it is the duty of a trustee or mortgagee under a power of sale not to sell more of the property than is necessary to satisfy the debts and costs, unless the interest of the owner demands it or the owner requests it. Where a deed of trust gives the trustee the discretion to sell as a whole or in parcels, this discretion must be exercised in good faith for the best interests of the beneficiaries including not only the creditor, but the debtor and his or her successors in interest. A sale en masse will not be disturbed simply because the land was not sold in parcels; there must be, in addition, evidence of fraud, unfair dealing, or of abuse of confidence.

55 Am. Jur. 2d Mortgages § 530.

The Maine statute permits the selling mortgagee to exercise the power of sale by selling the mortgaged property either as a whole or by parcels. *See* 33 M.R.S. § 501-A. Maine has not adopted any rule of preference for divisible parcels to be sold separately, as have other jurisdictions. *See Applefield v. Fid. Fed. Sav. & Loan Ass'n of Tampa*, 137 So. 2d 259, 261 (Fla. App. 1962)("the rule in Florida that a sale in parcels is preferred over a sale en masse where the former is practical and equitable to all parties"). Also, section 3.10(b) of the mortgage in this case authorized First Tracks to sell the property either as a whole or in parcels.

Similarly, First Tracks is correct in asserting that it had no legal duty to advertise the sale or make other efforts to generate interest in the property, beyond the statutory requirements.

Moreover, the fact that the notice of sale referred to the sale being "on site," does not violate the statute, despite the fact that such a locale does not track the

14

language of the form set forth in 14 M.R.S.A. § 6203-A(3). Nothing in the statute or the mortgage required the sale to be held in any particular location. What is more problematic is that the "site" encompasses 145 acres. To publish notice of an "on site" foreclosure sale of a quarter-acre lot is one thing; to publish such a notice for sale of a 145-acre farm is another.

In other words, although the foregoing circumstances—the decision to sell the property as a whole; the absence of advertising beyond the statutorily required minimum; the vagueness of the advertised location of the sale, and the bid amount— are factors to be evaluated in determining the overall reasonableness of the foreclosure sale process, they would likely not be sufficient, singly or in combination, to justify setting it aside.

However, the one undisputed fact that would change that conclusion is the fact that the foreclosure sale did not take place anywhere "on site," in direct contravention of the published notice. Given the requirement of strict compliance in a power of sale foreclosure that in and of itself terminates the debtor's rights in the property without any judicial oversight, it is difficult to see how a sale that was scheduled in a statutorily required published notice to be held "on site" but that in fact was held somewhere else could be declared valid.

Indeed, the fact that the actual location of the sale was contrary to the published location, coupled with the other factors just enumerated, would justify a finding that the sale was commercially unreasonable. Such a finding might not, in

15

and of itself, be sufficient to warrant aside the sale on equitable grounds, but it would be a factor weighing in favor of such an outcome.[3]

In this case, however, such a finding is unnecessary for two reasons. First, the Plaintiff has waived the deficiency claims that were the sole basis for its complaint, there being no declaratory judgment or quiet title count in the complaint. Second, by framing the relief sought in their counterclaims in terms of an award of damages rather than an order setting aside the sale, the Defendants have assumed a burden that the record before the court demonstrates they cannot meet—the burden of persuasion on causation and damages common to all of their counterclaims. Even were the sale not valid, a reasonable factfinder could not award damages to the Defendants on the basis of the *prima facie* showing that they were required to make in response to Plaintiff's motion for summary judgment.

*3. Evidence on Causation and Amount of Damages*

---

[3] Whether a foreclosure sale should stand or be set aside hinges on equitable considerations, *Keybank National Ass'n v. Sargent, supra,* 2000 ME 153 at ¶ 38, 785 A.2d at 538, but commercial reasonableness clearly can be a factor—albeit perhaps not a determining factor--in that analysis. *See Bar Harbor Bank & Trust v. The Woods at Moody, LLC,* 2009 ME 62, ¶ 20, 974 A.2d 934, 938 (applying commercial reasonableness standard to power of sale foreclosure procedure). "The court declines to graft a rule of commercial reasonableness onto the statutory framework for real estate foreclosures which the Legislature saw fit to enact without including an explicit reasonableness requirement. That is not to say, however, that real estate foreclosure sales may be conducted in a commercially unreasonable manner, because the court retains the option of exercising its equitable powers in any proceeding involving a challenge to the circumstances of the sale and the ensuing report." *Peoples Heritage Bank v. Bickford,* 1999 Me. Super. LEXIS 181, ¶ 5 n.2.

Were the Defendants asking the court to set aside the sale, some of the equities would favor their cause but some plainly would not—they did not challenge the sale in court immediately and Plaintiff has made significant improvements to the property since the sale. *Cf. Farm Credit of Aroostook v. Sandstrom,* 634 A.2d 961, 962 n.1 (Me. 1993) (mortgagor's challenge to foreclosure sale "should have been a separate, plenary action").

16

All of the Defendants' counterclaims require the Defendants to prove damages for their "lost equity." Because the Defendants do not contest First Tracks's legal right to conduct a power of sale foreclosure and are instead asserting an improper foreclosure sale, their "lost equity" claim is not measured in terms of the fair market value of the property as of January 4, 2010. Instead, it is measured by the difference between the bid price that would have been realized in the foreclosure sale without the irregularities and the bid price actually submitted by First Tracks.

To prevail on their counterclaims, the Defendants would have to prove both causation and damages—first, that the irregularities of which they complain negatively affected the sale price, and second, that as a result, they suffered damages in a reasonably specific amount.

Defendants' damages need not be proved to a mathematical certainty, but they cannot be left to speculation. *See Titcomb v. Saco Mobile Home Sales, Inc.*, 544 A.2d 754, 758 (Me. 1988). Money damages must "be grounded on established positive facts or on evidence from which their existence and amount may be determined *to a probability.*" *Id.*, (quoting *Michaud v. Steckino*, 390 A.2d 524, 530 (Me. 1978) (emphasis in original); *accord, Decesere v. Thayer*, 468 A.2d 597, 598 (Me. 1983).

As noted above, when a motion for summary judgment calls into question one or more elements of proof as to which the non-moving party has the burden of production and/or persuasion, the non-moving party can avoid summary judgment only by presenting what amounts to a *prima facie* case regarding the contested element. The Plaintiffs' motion challenges the sufficiency of Defendants' proof as to

17

both the amount of their damages and the causal connection between their damages and any of the irregularities identified in the Defendants' counterclaims.

In the face of Plaintiff's motion, the Defendants have not proffered evidence on the basis of which a reasonable factfinder could find in their favor on either causation or damages.

Had the sale been held "on site" at the barn, instead of off site in front of the schoolhouse, there is nothing in this record to suggest the outcome would have been different. None of the people who showed up at the barn on the day of sale was qualified to bid, and there is nothing in the record that affirmatively suggests any of them would have bettered First Track's $850,000 bid. Defendants have not shown there was any qualified bidder looking for the sale, or any qualified bidder who expressed interest, before or after the sale. *See Farm Credit of Aroostook v. Sandstrom, supra*, 634 A.2d at 962 (upholding denial of mortgagor's challenge to foreclosure sale based in part on absence of a qualified bidder).

The proposition that some effort beyond the statutorily required published notice to advertise the sale and generate interest might well have produced qualified bidders is plausible, but it does not substitute for evidence of damages. Moreover, Plaintiff was under no affirmative duty to make any effort to publicize the property or the sale beyond publishing the statutorily required notice. The same two points hold true for the proposition that the property should have been sold in parcels rather than as a whole.

The Defendants' filings include a detailed analysis of First Tracks's sale process, in the form of both an affidavit and deposition testimony, from an

18

experienced auctioneer who no doubt would qualify to testify as an expert in such matters. For all of the criticisms that his analysis makes of First Tracks's sale procedure, it does not include an opinion as to what bid price should have been realized, or even an opinion that the bid price in this case would more likely than not have been higher than it was. The closest his analysis comes to such an opinion is this: "In my experience, the winning bid at an auction usually falls in the range of 70% to a figure in excess of market value, depending on the desirability of the property in question." Def. Ex. 14, Affidavit of Paul McInnis at ¶21.

Defendants' burden of persuasion is to establish more than that—to recover damages, Defendants have the burden to show what the bid price for the property at issue here more likely than not would have been had the sale been conducted as they claim it should have been. This is not to detract from the auctioneer's analysis—in fact, the absence of such speculation lends it credibility.

However, the fact remains that the Defendants have not made a *prima facie* showing regarding either the amount of their damages or their causal burden—in other words, a showing that the errors and omissions they have identified in the Plaintiff's foreclosure process more likely than not resulted in any reasonably specific amount of loss to them. Plaintiff is entitled to summary judgment on all of the Defendants' several counterclaims.

### *Conclusion*

Defendants have not presented admissible evidence upon which a reasonable factfinder could conclude to a probability that Defendants should be awarded

19

damages in a reasonably specific amount as a result of any irregularities in the process. The other issues raised by the parties need not be decided.[*]

IT IS HEREBY ORDERED AS FOLLOWS:

Plaintiff's Motion to Dismiss and for Summary Judgment is granted regarding Counts I, II and III of the Defendants' counterclaims to the extent set forth herein and otherwise denied. Judgment shall be entered for Plaintiff on all counts of the Defendants' counterclaim.

Counsel are requested to confer on whether any party is entitled to (or is seeking) an award of costs, and to submit either a joint proposed judgment (without prejudice to any right of appeal) or separate proposed judgments, within twenty days of this Order.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated 13 April 2012

A. M. Horton
Justice, Business and Consumer Court

---

[*] With the waiver of deficiency, there is no claim in the Plaintiff's complaint to be decided. Also, this outcome obviates resolution of the Rule 12(b)(6) component of Plaintiff's motion as it relates to the Defendants' wrongful foreclosure claim. The viability of such a claim is an open question: Maine has not, at least as of yet, recognized any independent cause of action for wrongful foreclosure "as a means of challenging foreclosures of real property . . . ." *Ramsey v. Pepperell Bank & Trust*, 2007 Me. Super. Lexis 4, 10-11, *aff'd.* 2008 Me. Unpub. LEXIS 76 (mortgagee's failure to use a licensed auctioneer, as well as "faulty advertising", and an allegedly inadequate bid price, did not constitute wrongful foreclosure).

First Tracks Investments, LLC v. Sunrise Schoolhouse et al
BCD-CV-11-31

For Plaintiff:

U. Charles Remmell, II. Esq.
Lauri Boxer-Macomber, Esq.
Kelly Remmel & Zimmerman
53 Exchange St
PO Box 957
Portland ME  04112-0597


For Defendants:
Kelly McDonald, Esq.
Christopher Branson, Esq.
Murray Plumb & Murray
75 Pearl St
PO Box 9785
Portland ME  04104-5085